**DOANE et al.**

v.

**E. I. DUPONT DE NEMOURS & CO. (Inc.)**

No. 6734.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1954.

Decided Jan. 30, 1954.

H. Lee Kanter, Norfolk, Va. (Kanter & Kanter, and Vernon T. Forehand, Norfolk, Va., on the brief), for appellants.

Aubrey R. Bowles, Jr., Richmond, Va. (Jack N. Herod, Richmond, Va., Peter J. Nolan, Wilmington, Del., and Bowles, Anderson & Boyd, Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by ten employees of the Texas Company against E. I. DuPont de Nemours & Company, a Delaware Corporation, on account of injuries occasioned by the inhalation of noxious lead fumes in the course of removing tetraethyl lead sediment and other sludge from a tank used by Texas in its business of storing and marketing petroleum products at South Norfolk, Virginia. The work was done for Texas under the supervision and direction of a safety engineer, a specialist in the lead field, who was supplied for the purpose by DuPont in connection with the sale of its products containing tetraethyl lead to Texas.

The suit is based on the charge that the expert was negligent in failing to notify the men that it was unsafe to work in the contaminated tank without protective equipment. The injured men claimed and received compensation from Texas under the Workmen's Compensation Act of Virginia, Code Va.1950, § 65-1 et seq.; and the defense to the suit is that since the work was done in the course of Texas' business, the plaintiffs have no other claim against either Texas or DuPont. This defense was sustained by the District Judge who dismissed the case on the pleadings.

The case was heard on DuPont's motion for summary judgment. It was alleged in the complaint that the plaintiffs were employed by Texas and as such had the duty of cleaning its storage tanks by removing the deposits under the direction and supervision of a designated rep-

resentative of DuPont, whose duty it was, by virtue of an agreement with Texas to stand by and advise when a leaded tank was cleaned, and to see that proper protective equipment was used by the workers; and it was further alleged that on the occasion of the injuries the designated representative failed in this duty whereby the plaintiffs were severely injured. In an amended complaint these allegations were retained and it was added that DuPont had complete charge of the manufacture and distribution of tetraethyl lead and that as part of the consideration of the purchase of its product DuPont supplied the services of a safety engineer and technician in and about the handling the product because of its dangerous character; and that when a tank was to be cleaned Texas notified DuPont and the latter supplied the technician in accordance with the agreement and that this course was followed in the instant case.

The relations of the parties to each other thus described are not set out with sufficient detail to enable us to say whether, when the tank was being cleaned, the workmen of Texas and the technician of DuPont were all acting as employees of Texas, or whether the workmen were the employees of Texas, and the technician was the employee of DuPont in the performance of a service which it had agreed to render Texas. For the purposes of this discussion, however, it is immaterial which view is taken. The allegations of the complaint establish beyond any doubt that the cleaning of the tank was an operation performed in the course of the business of Texas, and hence under the law of Virginia, the plaintiffs have no cause of action against DuPont whether its technician was a fellow employee of the injured workmen of Texas for the purposes of the operation or was acting as the employee or representative of DuPont to supply the supervision which DuPont had agreed to furnish.

It is not and cannot be disputed that an employee of a business covered by the statute cannot maintain a suit against a fellow servant for injuries caused by the latter's negligence. This was decided in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73, where such an employee brought suit against the owner and operator of a truck contending that he was an independent contractor; but the court found that he was a fellow servant of the plaintiff and dismissed the case. In discussing the question the court said:

"It seems clear that it was the legislative intent to make the act exclusive in the industrial field so that, in the event of an industrial accident, the rights of all those engaged in the business would be governed solely thereby. The remedies afforded the employee under the act are exclusive of all his former remedies within the field of the particular business, but the act does not extend to accidents caused by strangers to the business. If the employee is performing the duties of his employer and is injured by a stranger to the business, the compensation prescribed by the act is available to him, but that does not relieve the stranger of his full liability for the loss, and, if he is financially responsible, there is no reason to cast this loss as an expense upon the business.

"This seems to have been the underlying reason for the amendments to section 12, which provided for the subrogation to the employer of the employee's right against such strangers in case the employee accepts compensation for an injury arising out of and in the course of his employment but caused by a stranger to the business. Such a loss was not truly inherent in the business but was caused by the wrongful act of a stranger to it. (185 Va. 102, 38 S.E.2d 75.)

＊　＊　＊　＊　＊　＊

" 'Any other party,' as used, does not necessarily include a coemployee or a fellow servant. It certainly includes a third party, a stranger in the field of that employment. When

the theory, the history and the broad purpose of the act are considered, it would seem that 'other party,' as used in section 12, refers exclusively to those persons who are strangers to the employment and the work, and does not include those who have accepted the act and are within the express terms of section 11—'he (employer) or those conducting his business.'

"If the contention of defendant in error is sustained (that is—that 'other party' refers to and includes a fellow servant), then the employee's right against the fellow servant is assigned by the act to the employer or the compensation insurance carrier. It would follow that the act would not cover the entire field of industrial accidents because common-law litigation would inevitably arise in cases where the injury or death was due to the negligence of another employee. Instead of the loss of such industrial accidents being cast upon business as an expense thereof, the wages of fellow workmen will become an ultimate insurance fund for the exoneration of both industry and compensation insurance carriers for the ultimate loss. Instead of providing relief to workmen, it will place in the power of employers and compensation insurance carriers the right to recoup from workmen loss which should be borne by the business.

"To this point we have confined the discussion to the general theory upon which conmpensation law is based and the specific language of the Virginia act. Turning to the decisions in other jurisdictions we find a hopeless conflict on the question." (185 Va. 104, 38 S.E.2d 76.)

The same result was reached in Coker v. Gunter, 191 Va. 747, 63 S.E.2d 15. It is manifest from these holdings that an employee covered by the Act has no right of action against another party for injuries received while engaged in the business of his employer unless that oth-er party is a stranger to the business. We had occasion to consider such a situation in Sears, Roebuck & Co. v. Wallace, 4 Cir., 172 F.2d 802, where an employee of a sub-contractor engaged in extensive alterations of a building, was injured by reason of the defective condition of an elevator negligently maintained by the occupant of the building for whom the work was being done. Under the authority of Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469, the employee was allowed to recover from the occupant who used the building in his business for the storage of merchandise, and the defense that the injured man could only recover compensation under the statute was overruled. The ground of the decision was that the alteration of the building was not part of the business of the occupant and therefore the occupant was not obliged to provide compensation for the employees of the sub-contractors, but was a stranger to the latter's business and as such answered to the description of the "other party" who, under § 12 of the Act, 1950 Code of Virginia, § 65–38, is subject to suit in a common law action.

The principle enunciated in these decisions is controlling here since the DuPont technician and the injured men were both engaged in the operation of the business of Texas. The appellants, however, contend that even if this be so, they have a right of action against DuPont because the technician was its employee and it was a stranger to the business of Texas within the meaning of the statute. Strong reliance is placed upon the decision of the Supreme Court of Kentucky in Dillman v. John Diebold & Sons Stone Co., 241 Ky. 631, 44 S.W.2d 581, 583, where the employee of a general contractor engaged in constructing an addition to a municipal water system was allowed to recover in a common law action from a sub-contractor on the work for injury caused by the latter's negligence. It was held under the Kentucky statute that an employee of a sub-contractor on an operation may not recover damages from the general contractor when all

parties are operating under the statute, since the general contractor owes him the duty to provide compensation; but an employee of the general contractor may sue the sub-contractor since the latter does not owe him the duty of compensation. "In short", said the court, "the statute operates downward in so far as the liability of the principal or prior contractor is concerned, and upward, in so far as the employee's right of compensation is concerned."

We do not think that a similar construction can be given to the Virginia statute in harmony with the decisions of the Virginia court. As we read these decisions the decisive question is whether the claimant was injured while engaged in an operation which entered directly into and became a part of the business of the person for whom the work was being done. If a workman is so engaged, he is covered by the compensation which the owner of the business is obliged to furnish, and he has no right of action against any one else engaged in the same operation.[1] We quote again the language from Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 122, 123, 41 S.E.2d 469, 472, construing §§ 12 and 20(a) of the Act, Code of Virginia 1950, §§ 65–37 to 39, and 65–26 to 31, where, referring to § 20(a) the court said:

"The section makes the owner liable if the workman, no matter how far down the line, is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation. But if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor is liable to the workman, but not the owner. As between the owner and such contractor, the latter is an independent

contractor, and the last paragraph of section 12, above quoted, declares that such workman shall not be taken to be the employe of such owner. And such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade, business or occupation of the contractor; but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not a part of the trade, business or occupation of the original contractor.

"It clearly appears to be the purpose of section 20(a) to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe engaged in that work every such owner, or contractor, and subcontractor, above such employe. But when the employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe is not a part, then that employer is not liable to that employe for compensation under section 20(a). At that point paragraph 5 of section 12 intervenes and the employe's right of action at common law is preserved."

In this pronouncement of the court the obligation of an owner to furnish compensation to workmen doing some part of his business, no matter how far down the line, is clearly set out; but there is nothing to indicate that while a workman is so engaged, he has a common law right of action against any contractor or work-

---

**1.** In Southern Stevedoring Corp. v. Harris, 190 Va. 628, 58 S.E.2d 302, a checker of cargo employed by a shipowner, who was injured by the negligence of an employee of the Stevedoring Corporation engaged in loading the ship, was allowed to recover against that corporation; but the checker refused to accept compensation from the Stevedoring Corporation, and it does not appear that he had accepted the provisions of the act or that his employer had complied therewith.

man below him in the descending line. The purpose of the Virginia statute, as interpreted by its highest court is to limit the recovery of all persons engaged in the business under consideration to compensation under the act, and to deny an injured person the right of recovery against any other person unless he be a stranger to the business.

Affirmed.