Present: All the Justices

MONA B. FOWLER

                                        OPINION BY
v.  Record No. 000177        CHIEF JUSTICE HARRY L. CARRICO
                                      November 3, 2000
INTERNATIONAL CLEANING
SERVICE, INC.

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Melvin R. Hughes, Jr., Judge

     This case is a corollary to Stone v. Door-Man Mfg. Co., 260 Va. ___, ___ S.E.2d ___ (Record No. 000175), this day decided. There, we held that an employee of an owner whose business consisted of manufacturing and selling motor vehicles was not the statutory fellow employee of the architect and contractors involved in a construction project at the owner's plant.  Here, the issue is whether a worker in the employ of the owner of a retail furniture business was the statutory fellow employee of a firm that regularly provided cleaning and janitorial services at the owner's store.

     The question stems from an action brought by Mona B. Fowler (Fowler) against International Cleaning Service, Inc. (International) for personal injuries sustained when Fowler slipped on a tile floor in the store of her employer, Sears Homelife Furniture (Sears), after the floor had been "wet-mopped" by an International employee.  Fowler claimed that International negligently failed to place signs or otherwise

warn of the dangerous condition which existed.  In response, International filed a special plea asserting that Fowler's exclusive remedy was provided by the Workers' Compensation Act (the Act) and that her action was barred by the Act's exclusivity provision.[1]

After a hearing on the special plea, the trial court held that International "is a statutory employee of Sears and [Fowler's action] against [International] is barred by the worker's compensation law."  From an order dismissing the action with prejudice, we awarded Fowler this appeal.

At the time of her injury on May 19, 1997, Fowler was an employee of Sears at its store in Chesterfield County.  Sears is engaged in the business of selling furniture at retail, including sofas, living room sets, dining room sets, and bedroom sets.  International was engaged in the business of providing cleaning and janitorial services and had been under contract to provide such services at Sears' Chesterfield store since it opened in 1994.

Sears gave International a set of guidelines delineating what was to be cleaned.  International regularly cleaned the store on Mondays and Fridays of each week, spending two to three hours per day at the store during the same hours Sears'

_____

[1] The record shows that Fowler received workers' compensation benefits as a result of her injury.

employees were on the job. International furnished its own cleaning supplies and kept them in an unlocked janitor's closet at the store.

Sears hired no maintenance staff and its employees did not clean bathrooms or mop floors. However, Sears' employees were expected to wipe up anything they spilled. They also swept the concrete floor of the store's warehouse about once a week. In addition, they routinely carried trash to a dumpster located on store premises.

Sears furnished paper towels, hand soap, and toilet paper for use in the store. Sears' personnel also had access to the janitor's closet and used International's equipment and cleaning supplies when needed, including International's vacuum cleaner. Sears provided half the "[w]et floor signs" used at the store because, if International personnel were stripping floors, International's signs were insufficient to cover the whole area involved.

Sears considered it important to keep its work area, its showroom, and other parts of the store clean, attractive, and safe. It was part of every employee's job description to participate in making a good appearance to the public.

As noted supra, International's special plea asserted that Fowler's action was barred by the Act's exclusivity provision.

The provision is found in Code § 65.2-307, which reads as follows:[2]

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

The exclusivity provision does not apply, however, to a common law action for an employee's injury or death against an "other party."  Code § 65.2-309; Stewart v. Bass Constr. Co., 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982).

Whether a person or entity is a statutory employee is a jurisdictional matter presenting a mixed question of law and fact that must be resolved in light of the facts and circumstances of each case.  Cooke v. Skyline Swannanoa, Inc., 226 Va. 154, 156, 307 S.E.2d 246, 247 (1983).  Where, as here, the facts relevant to resolution of the jurisdictional issue are not in dispute, "we must determine whether the trial court correctly applied the law to those facts."  Cinnamon v. International Bus. Mach. Corp., 238 Va. 471, 474, 384 S.E.2d 618, 619 (1989).

With respect to the issue whether International and Fowler are statutory fellow employees, Fowler argues for application of

_____

[2] Code § 65.2-307 was amended in 1999 to add a new

the "normal work" test and International for application of the "stranger to the work" test. The "normal work" test was recognized in Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (1972). That case involved two workers employed by the lessee of a service station owned by Shell Oil Company. We held the workers were not the statutory employees of Shell Oil, stating as follows:

> "[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors."

Id. at 722, 187 S.E.2d at 167 (quoting 1A Arthur Larson, The Law of Workmen's Compensation § 49.12 (1973)).

The "stranger to the work" test is derived from the language of Code § 65.2-309(A), noted above, which recognizes the right of an injured worker to maintain a common law action for personal injury against an "other party." The test was first applied in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73 (1946), where we said:

> The remedies afforded the employee under the act are exclusive of all his former remedies within the field of the particular business, but the act does not extend to accidents caused by strangers to the business. If the employee is performing the duties of his employer and is

paragraph, inapplicable here.

5

injured by a stranger to the business, the compensation prescribed by the act is available to him, but that does not relieve the stranger of his full liability for the loss . . . .

Id. at 102, 38 S.E.2d at 75-76 (emphasis added).

Although the "normal work" test had been discussed numerous times in our decisions subsequent to Shell Oil, it was not until Stone that we were presented with the situation we have here, where the question is whether a worker employed by an owner is a statutory fellow employee of a contractor engaged to perform work on the owner's premises.[3]  We found "closely analogous," however, the case of Whalen v. Dean Steel Erection Co., 229 Va. 164, 327 S.E.2d 102 (1985).  Stone, 260 Va. at ___, ___ S.E.2d at ___.

In Whalen, the issue was whether a worker employed by a general contractor may bring a tort action against a subcontractor for personal injuries caused by the subcontractor's negligence on the job.  In resolving this issue, we said the "normal work" test was "inapplicable," 229 Va. at 170, 327 S.E.2d at 106, and that the "stranger to the work" test was the appropriate measure, id. at 169, 327 S.E.2d at 105. Applying the latter test, we held that the worker's action was

_____
[3] Two cases decided post-Shell Oil and pre-Stone involved claims by an employee of an owner but the "normal work" test was not mentioned in either opinion.  Both were decided under the "stranger to the work" test.  Stewart v. Bass Constr. Co., 223

6

barred.  Id.  We stated that the subcontractor "was no stranger to the work in which [the worker's] employer was engaged, but was, on the contrary, performing an essential part of it."  Id. (Emphasis added.)[4]

We also stated in Stone that an employee of an owner is on at least an equal legal footing as an employee of a general contractor.  260 Va. at ___, ___ S.E.2d at ___.  Combining the language in Whalen and Feitig and applying the holdings to the situation in Stone, we found that " 'the work in which [Stone's] employer was engaged' was [Ford Motor Company's] 'particular business' of manufacturing and selling motor vehicles" and that "[t]he defendants were strangers to that business."  260 Va. at ___, ___ S.E.2d at ___.  Accordingly, we concluded that Stone's common law action for personal injuries against the defendants was not barred.  Id. at ___, ___ S.E.2d at ___.

---

Va. 363, 288 S.E.2d 489 (1982); Williams v. E. T. Gresham Co., 201 Va. 457, 111 S.E.2d 498 (1959).

[4] Fowler correctly points out that in Whalen we also said the "stranger to the work" test requires an analysis of the facts of each case to determine whether a defendant is "a stranger to the work in which the plaintiff was engaged." 229 Va. at 169, 327 S.E.2d at 105. Yet, Fowler complains, International presented no evidence concerning the work in which Fowler, the plaintiff here, was engaged.  However, the language from Whalen quoted in the text above, which appears in the Whalen opinion just seven lines below the language Fowler quotes, makes it clear "the work in which the plaintiff was engaged" means "the work in which [the plaintiff's] employer was engaged."  Id.

7

Here, Fowler argues that because the evidence showed the provision of cleaning and janitorial services was not part of Sears' business, it follows that International was a stranger to the business and subject to her action for damages. However, as we stated in Floyd v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962):

> The test is not whether the owner, by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business or occupation of the owner. If he is, and in doing the work injures an employee of the owner, then the independent contractor, in the same fashion as any other employee of the owner, is not a third party against whom the injured employee's right of action is preserved; but the employee so injured is limited to the compensation provided by the Workmen's Compensation law . . . .

Id. at 274, 123 S.E.2d at 372.

The issue, therefore, is whether International was an "other party" under Code § 65.2-309 and, hence, a stranger to Sears' "particular business" of selling furniture. Feitig, 185 Va. 102, 38 S.E.2d at 75. In resolving that issue, a key consideration is whether, in providing cleaning and janitorial services to Sears, International was "performing an essential part" of Sears' furniture business. Whalen, 229 Va. at 169, 327 S.E.2d at 105.

This Court has not previously considered the question whether the provision of cleaning and janitorial services is a

8

part of an owner's trade, business, or occupation.  However, in Doane v. E.I. DuPont de Nemours & Co., 209 F.2d 921 (4th Cir. 1954), the United States Court of Appeals for the Fourth Circuit, interpreting Virginia law, considered whether a chemical firm furnishing the material to clean an owner's oil tank, as well as a safety engineer to supervise the cleaning, was liable to the owner's employees injured by the inhalation of noxious fumes.  The Court found that "the cleaning of the tank was an operation performed in the course of the [owner's] business," id. at 923, that the chemical firm's safety engineer and the injured workers "were both engaged in the operation of [that] business," id. at 924, and that the employees had no common law right of action against the chemical firm because it was not a stranger to the business, id. at 925-26.

Here, both International and Sears were involved in cleaning Sears' premises.  Sears' employees cleaned up spills, swept the warehouse floor, and carried trash to the dumpster. International's personnel cleaned bathrooms, mopped floors, stripped floors, and performed other cleaning functions.  Sears' personnel used International's cleaning supplies and equipment, which were stored in a closet provided on Sears' premises.  When International stripped floors, Sears provided half the signs needed to warn of possible danger.

9

The combined efforts of International and Sears were designed to accomplish Sears' goal of making its store clean, attractive, and safe — a goal necessary to the successful operation of Sears' furniture business.  And, by its participation in those efforts, International was "performing an essential part" of Sears' business.  Whalen, 229 Va. at 169, 327 S.E.2d at 105.  Hence, International was not a stranger to Sears' business.  The trial court did not err, therefore, in dismissing Fowler's action with prejudice.  For this reason, we will affirm the judgment of the trial court.

Affirmed.