# CIRCUIT COURT OF THE CITY OF DANVILLE

Mary H. Stoddart

v.

Floor Care Specialists, Inc.

August 8, 2001

Case No. 00-68CL

BY JUDGE JOSEPH W. MILAM, JR.

This slip and fall case was filed April 14, 2001, by Mary H. Stoddart against Floor Care Specialists, Inc. ("Floor Care"). In her motion for judgment, Ms. Stoddart alleges negligence arising out of Floor Care's contractual duty to provide certain janitorial services at the premises of Ms. Stoddart's employer, Danville Urologic Clinic ("Clinic"). Specifically, Ms. Stoddart claims she was injured April 15, 1998, when she encountered a wet substance and fell in a restroom at the Clinic. Ms. Stoddart avers that Floor Care was negligent by failing to warn and/or by allowing the wet substance to remain on the floor.

In its grounds of defense, Floor Care denies negligence and asserts that Ms. Stoddart's claim is barred by contributory negligence and by assumption of the risk. Floor Care also filed a separate plea in bar in which it asserts that Ms. Stoddart's claim is consumed by the exclusivity provision of the Workers' Compensation Act, as adopted in Virginia [hereinafter the "Act"].

An evidentiary hearing was held June 13, 2001, in which Floor Care called two witnesses, namely Lewis C. Smith, Jr., owner of Floor Care, and Joy Biggs, Comptroller of Clinic, in support of its plea. For the purpose of Floor Care's plea, the evidence consists of the testimony of Mr. Smith and Ms. Biggs. In addition, the Court notes Ms. Stoddart's acknowledgement by her counsel that she sought and received benefits under the Act for injuries sustained in the accident at issue in this case.

The Court has considered memoranda submitted by the parties, the evidence, and the oral arguments of counsel. Ms. Stoddart attempts to distinguish *Fowler v. International Cleaning Service*, 260 Va. 421, 537 S.E.2d 312 (2000), and argues that her case is controlled by *Stone v. Door-Man Manufacturing*, 260 Va. 406, 537 S.E.2d 305 (2000). Floor Care argues that *Fowler*, not *Stone* controls the case at bar.

Many of the facts material to Floor Plan's plea are not disputed.[1] Floor Care provides janitorial services, as well as grounds and parking lot maintenance pursuant to a written contract.[2] Floor Care has provided these services to Clinic for approximately twelve years and was providing such services at the time of the accident at issue in this case. Clinic occupies two buildings, one primarily devoted to urology services, where the accident at issue occurred, and the other primarily devoted to nephrology services including dialysis. Paper products, cleaning solutions, trash bags, and similar supplies regularly used by Floor Care at the Clinic are purchased by the Clinic. Vacuums, mop buckets, mop handles, dusters, rags, and mowers[3] are owned by Floor Care, but stored on the premises of Clinic. Floor Care stores equipment and supplies in storage rooms in each of Clinic's buildings. The storage room in the Clinic's building where the accident at issue occurred is unlocked. Clinic also contracts with a third party to "break down" and dispose of rather large quantities of corrugated boxes and packing materials, which Clinic receives on a regular basis in the course of its business. Trash dumpsters rented by Clinic are used by Floor Care and the other contractor for trash disposal. Floor Care provides "floor to ceiling" cleaning services on a daily basis. Periodic services such as stripping and waxing of floors are provided twice each year. Floor Care does not provide sterilization or medical sanitation services. Nor does Floor Care manage clean ups of blood or other bodily fluids. These matters are managed and coordinated by a biomedical supervisor employed by Clinic. Generally, Floor Care's services are performed each business day after regular office hours and on week-ends, although there are times when both Clinic's and Floor Care's employees are present at Clinic's facilities.

---

[1] Since there is no dispute as to these facts, references to the transcript are omitted. A fairly detailed factual recitation together with references to the transcript is included as part of Floor Care's memorandum.

[2] One iteration of the contract was exhibited at the evidentiary hearing, but apparently by inadvertence the contract was not submitted into evidence and not included with the transcript.

[3] At some point in time prior to the accident, Floor Care used mowers owned by Clinic.

Mr. Smith testified that both Floor Care and Clinic owned "Wet Floor" signs stored in the same storage area as janitorial supplies and equipment. He testified that Floor Care uses both its own and Clinic's "Wet Floor" signs. (June 13 hearing transcript, at 14 [hereinafter "Tr."].) Ms. Biggs could not recall whether or not Clinic owned its own "Wet Floor" signs. (Tr. 33, 39-40.) Mr. Smith testified that Clinic's employees have the authority to instruct Floor Care regarding janitorial servicing needs. (Tr. 18-19, 24.) Ms. Biggs testified that, other than calling Floor Care's attention to conditions posing risks to patients or equipment, information or instructions to Floor Care are communicated by Clinic's biomedical supervisor directly to Mr. Smith. (Tr. 36-38.) Mr. Smith states that Clinic's employees have access to and use equipment of Floor Care stored at Clinic. (Tr. 14, 22.) Ms. Biggs testified that Clinic's employees were not expected to perform janitorial duties except in the case of accidental spills and/or other unsightly conditions such as mud on a carpet. (Tr. 28, 36-38.) Ms. Biggs noted that Clinic owned a portable vacuum, and Floor Care's vacuum would be available to employees of Clinic if they knew where it is located. (Tr. 29.)

Ms. Stoddart works as a transcriptionist. Her services are performed in an area of Clinic away from waiting, examination, and treatment areas normally frequented by Clinic's patients. Although Clinic's primary mission is to provide professional medical services to patients, Ms. Biggs testified that it is important that a medical facility is kept clean. (Tr. 26-28, 36.)

Although certain obvious similarities are acknowledged, Ms. Stoddart asserts that *Fowler, supra*, is distinguishable from the case at bar for the following reasons: (1) Clinic offers professional services, not consumer goods; (2) Floor Care is a stranger to Clinic's primary mission of providing medical services; and (3) Floor Care and Clinic do not engage in "joint" or "combined" activities.

It is the opinion of this Court that *Fowler, supra*, applies to the facts of the case at issue and that Ms. Stoddart's claim must fail. Although Clinic provides specialized professional services, Ms. Biggs' testified that if an independent contractor did not provide janitorial services, Clinic would have to hire staff to perform such services. (Tr. 28.) It comes as no surprise that individuals seeking medical attention would expect clean and orderly examination and treatment facilities. Floor Care provides janitorial services each regular business day and more extensive services on a periodic basis. Floor Care is certainly not a stranger to Clinic. To the contrary, daily janitorial service is the norm and constitutes business as usual for Clinic. Clinic actually purchases supplies used by Floor Care and has access to Floor Care's equipment. Clinic's employees were expected to clean up certain spills and messes under

certain conditions. The fact that most of Clinic's basic janitorial needs are provided by independent contractors does not in and of itself mean that services provided by Floor Care are unnecessary or that there is insufficient "joint" activity to avoid application of the Act's exclusivity bar. *See Williams v. E. T. Gresham Co.*, 201 Va. 457, 111 S.E.2d 498 (1959) (pile driving services and related equipment provided exclusively by outside contractors).

In short, the facts of *Fowler, supra,* are strikingly similar to those of this case. Just because Clinic is engaged in providing professional services, as opposed to retail sales of consumer products, this alone is insufficient to justify a result contrary to that of *Fowler, id.* If janitorial services were unnecessary to the ongoing operation of a medical practice, it seems unlikely that Clinic would pay the considerable fees and costs required by its contract with Floor Care. Counsel for Ms. Stoddart questioned Ms. Biggs regarding the absence of urologists and nephrologists not affiliated with Clinic practicing in the immediate area. Although local competition among retailers of consumer goods may be more intense than that encountered by Clinic, Ms. Biggs' testimony confirms that basic cleanliness remains important to any health care facility serving the public.