PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Kinser, and Lemons, JJ., and Compton, S.J.

GERALD ANDERSON

v.  Record No. 003017

GEORGE A. DILLOW, JR., ET AL.

OPINION BY
SENIOR JUSTICE A. CHRISTIAN COMPTON
November 2, 2001

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles E. Poston, Judge

In this tort action seeking recovery for personal injuries sustained in a work environment, the sole question is whether the action is barred by the exclusivity provision of Code § 65.2-307 of the Virginia Workers' Compensation Act, §§ 65.2-100 through -1310 (the Act).

In April 1997, plaintiff Gerald Anderson, an employee of a general contractor, Virginia International Terminals (VIT), was injured by the alleged negligence of defendant George A. Dillow, Jr., an employee of defendant subcontractor Waste Management (sued as Waste Management of Hampton Roads and Waste Management of Virginia, Inc.).  The accident occurred on the premises of the Norfolk International Terminal (NIT).  Subsequently, the plaintiff received workers' compensation benefits from his employer.

Later, the plaintiff filed this action against Dillow and Waste Management seeking recovery for personal injuries sustained in the accident.  In a motion to dismiss pursuant to a

special plea, defendants asserted that the Act barred plaintiff's common law action because Waste Management was not an "other party" within the meaning of the Act.

During a hearing on the motion to dismiss, the trial court considered a deposition of defendant Dillow; affidavits; answers to interrogatories; a "Service Agreement" between the owner, Virginia Port Authority, and VIT; a "Solid Waste Removal and Disposal" contract between VIT and Waste Management; memoranda of law; and argument of counsel.

In a September 2000 letter opinion, the court granted the motion and sustained the special plea, ruling that the plaintiff's exclusive remedy was his claim under the Act. From a final order entering judgment for the defendants, we awarded the plaintiff this appeal.

The law upon the issue presented here is settled and has been established in the numerous cases arising under the relevant portions of the Act. Code § 65.2-307 (formerly § 65.1-40) provides that the rights and remedies granted by the Act to an employee, on account of personal injury or death by accident, exclude all other rights and remedies of such employee, or the employee's personal representative, at common law or otherwise. But an exception to the foregoing exclusivity provision is found in Code § 65.2-309(A) (formerly § 65.1-41). The statute provides that such employee, or the personal representative, is

2

authorized to maintain an action at law against the tortfeasor if the wrongdoer is an "other party" within the meaning of § 65.2-309.

Whether a person is subject to the exclusivity provision presents a mixed question of law and fact that must be resolved on appeal in light of the facts and circumstances of each case. Fowler v. Int'l Cleaning Serv., 260 Va. 421, 425, 537 S.E.2d 312, 314 (2000). When, as here, the facts relevant to this jurisdictional issue are not in dispute, we must determine whether the trial court correctly applied the law to those facts. Id.

VIT, the general contractor, is a nonprofit, nonstock corporation that entered into the Service Agreement with the Virginia Port Authority to manage, operate, and conduct the business of NIT, the terminal, for the Commonwealth of Virginia. NIT is a commercial port whose operations include loading and unloading commercial freight, storing commercial freight in warehouses, breaking down freight from shipping containers, removing shipping material from freight, and general maintenance of port facilities.

The general contractor is required to operate and maintain the terminal so that commercial traffic can be accommodated in a clean, safe, and orderly manner, and thus ensure that shipping debris and other generated waste is removed from the terminal.

According to an affiant, removal of shipping debris and waste from the port "was an essential part of VIT's business of operating the port and maintaining NIT in a clean, safe and orderly manner under the Service Agreement with the Commonwealth of Virginia."

In 1986, VIT contracted with Service Disposal Corporation, an entity acquired by Waste Management in 1988, "to assist in the maintenance of the port by, among other things, removing shipping debris and waste" from the terminal. Upon Waste Management's acquisition of Service Disposal, Waste Management assumed those contractual responsibilities.

Under the contract between VIT (the general contractor) and Waste Management (the subcontractor), VIT collected shipping debris and waste at various areas of the terminal and deposited this shipping debris and waste, which was generated by the operations and maintenance functions, into containers provided by Waste Management. VIT accomplished this activity by using VIT employees and VIT forklifts to move Waste Management containers to VIT-designated sites for pick-up by Waste Management.

On Monday through Friday of each week, a Waste Management truck emptied each of the containers located at the VIT-designated sites throughout the terminal and removed shipping debris and waste from the terminal premises. Under the contract

4

between VIT and Waste Management, VIT was responsible for fees incurred as a result of Waste Management's disposal of VIT's shipping debris and waste at landfills.

On the day of the accident in question, the defendant Dillow was an employee of Waste Management, acting within the scope of his employment by carrying out Waste Management's obligations under the VIT-Waste Management contract. He was operating a front-loading collection vehicle, and his route required him to collect shipping debris and waste located in several Waste Management containers at locations designated by VIT. When the accident occurred, Dillow was in the process of emptying a series of those containers filled with shipping debris and waste located on 6th Street near Warehouse 6K. The number of containers at that location varied from day to day as VIT routinely would move those containers in and around the port facilities to accommodate port operations and maintenance.

At the time of the accident, the plaintiff was operating a VIT "yard hustler" vehicle on 6th Street and acting within the scope of his employment as a freight handler for VIT. The plaintiff alleges Dillow negligently backed the Waste Management vehicle into the left side of the hustler, causing the injuries.

Even though the broad question here is whether the defendants were "other parties," the precise issue is whether, at the time of the accident, the defendants were strangers to

the trade, business, or occupation in which the plaintiff was involved. Whalen v. Dean Steel Erection Co., 229 Va. 164, 167, 327 S.E.2d 102, 104 (1985). Accord Fowler, 260 Va. at 428, 537 S.E.2d at 315. See Peck v. Safway Steel Products, Inc., 262 Va. 522, 525, 551 S.E.2d 328, 329 (2001).

Therefore, applying this "stranger to the work" test, if defendants were engaged in the trade, business, or occupation of plaintiff's employer, the trial court was correct and the plaintiff's common law action is barred. If, however, defendants were not so engaged, the trial court erred. We hold that the trial court was correct.

As the trial court determined, in order for VIT, the plaintiff's employer, to reasonably operate the terminal in a clean, safe, and orderly manner, the premises had to be kept free of large quantities of shipping debris and waste generated daily. This required collecting the debris and removing it from the terminal to a landfill.

At the time of this accident, VIT was responsible for collecting the debris and waste generated by the operations and maintenance functions throughout the terminal and depositing the materials into containers. VIT could have elected to complete the effort of removing and disposing of the debris and waste using its own employees and purchasing and operating its own equipment. Instead, VIT chose to subcontract to Waste

6

Management the final part of VIT's own responsibility to maintain the premises free of debris and waste.

Therefore, Waste Management's actions in removing the debris and waste from the terminal and transporting it to landfills amounted to a continuation and extension of VIT's effort to operate the port in the clean, safe, and orderly manner required by the Service Agreement with the Port Authority. As the trial court observed, VIT's obligation for fees Waste Management incurred as the result of disposing the material at landfills emphasizes VIT's "overarching responsibility" for maintaining and operating NIT.

Consequently, removal of debris and waste under these circumstances cannot be deemed merely incidental to the operation and maintenance of this terminal facility; to the contrary, it is an essential and indispensable part of that business, as the trial court determined. Thus, Dillow and Waste Management cannot be considered strangers to VIT's trade, business, or occupation, and, as such, they are not "other parties" within the meaning of the Act. The plaintiff's exclusive remedy for his accidental injury lies within the benefits afforded by the Act.

Accordingly, the judgment of the trial court will be

Affirmed.

7