## CIRCUIT COURT OF THE CITY OF RICHMOND

Eric C. Hanner

v.

Michael A. Clark et al.

November 8, 2001

Case No. LL-967-3

BY JUDGE T. J. MARKOW

This case is before the Court on a Special Plea in Bar based on Virginia's Workers' Compensation Act filed by defendants Michael A. Clark,[1] Craig Peterson, and USA Waste of Virginia, Inc.[2] Defendants Clark and Waste Management allege that plaintiff's cause of action is barred under the exclusivity provision of the Workers' Compensation Act because the defendants are statutory employees of the City of Richmond, Plaintiff's employer, and they were engaged in the City's trade, business, or occupation. Plaintiff argues that the defendants are not co-statutory employees and plaintiff's cause of action is not barred by the Workers' Compensation Act.

Briefly, plaintiff was injured during his employment as a trash truck driver for the City of Richmond. On August 25, 1998, plaintiff drove his truck to the

---

[1] For the purposes of this opinion, "Clark" shall include defendants Michael A. Clark, Renegade Express, Renegade Express, Ltd., and Stephen R. Adkins, individually and trading as Renegade Express and/or Renegade Express, Ltd.

[2] The pleadings indicate that USA Waste of Virginia, Inc., is the proper defendant. However, for the purposes of this opinion, "Waste Management" shall include USA Waste of Virginia, Inc., Waste Management of Virginia, Inc., USA Waste Management, Inc., Waste Management, Inc., Waste Management of Delaware, Inc., USA Waste Services, Inc., and Craig Peterson.

trash transfer station at Hopkins Road. He was instructed by Waste Management employees where to park and unload his truck. Peterson, an employee of Waste Management assigned to direct traffic at the transfer station, directed Clark as he operated his trash truck. Clark was an employee of Renegade, an independent contractor hired by Waste Management to haul trash from the transfer station to the landfills. Plaintiff was injured when the door of Clark's trash truck swung open and pinned plaintiff against his own truck.

The plaintiff filed a workers' compensation claim against the City. He then filed a Motion for Judgment against Waste Management, Peterson, Michael Clark, and others, based on the injuries he received on August 25, 1998.

The City rids itself of trash generated by its citizens, both residential and commercial, by its own pickup and delivery to transfer stations. Individual and contract trash haulers, as well as City owned trash trucks, carry trash from the generation sites (homes and businesses) to the transfer stations. From the transfer station, larger trucks carry the trash to landfills for final disposal. For many years, the City owned its own landfills. When that became impracticable, the City developed the transfer station scheme of trash disposal.

The City owns the transfer station at Hopkins Road, where Plaintiff was injured. Prior to 1989, City employees operated the transfer station as a part of the City system of collecting and disposing of garbage. In 1989, the City contracted with the company now known as Waste Management to operate the facility and haul trash to landfills. The City still owns the real property, the buildings, the scales, and other equipment that make up the transfer station. Waste Management uses both the City equipment as well as its own equipment to run the transfer station. The City supervises all Waste Management operations at the Hopkins Road transfer station.

Waste Management accepts a significant quantity of trash from private persons and entities. The contract between the City and Waste Management explicitly includes receiving trash at the transfer station that was brought there by private haulers. At the time the City operated the transfer station, trash from private persons and entities was also accepted. Waste Management also operates a private trash pickup and hauling system which delivers a large percentage of all of the trash processed at the transfer station. The contract contemplates that Waste Management will accept trash from private sources and requires that all trash be removed from the transfer station and hauled to the landfills on a daily basis. Waste Management contracts with an independent company to haul trash to landfills.

## Trade, Business, or Occupation

The Defendants contend that the Workers' Compensation Act bars the present action against them because they were engaged in the trade, business, or occupation of the City and are thus statutory employees of the City.

The Workers' Compensation Act provides that recovery under the Act is the exclusive remedy for injured employees. Va. Code § 65.2-307. However, this exclusivity provision limits common law recovery from employers and is not applicable to a common law action against an "other party." Va. Code § 65.2-309, *Fowler v. International Cleaning Service*, 260 Va. 421, 425, 537 S.E.2d 312 (2000) (citing *Stewart v. Bass Constr. Co.*, 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982)).

In order to be an "other party," a person or entity must be engaged in an operation that is not the trade, business, or occupation of the employer. "Deciding what is the trade, business, or occupation of an entity … is a question that does not readily yield to categorical or absolute standards." *Henderson v. Telephone Co.*, 233 Va. 377, 382, 355 S.E.2d 596 (1987) (citation omitted). Ordinarily, the trade, business, or occupation of a business is determined by looking at the work in which the business normally engages. *Henderson* at 383. However, the standard for determining the trade, business, or occupation of a governmental entity is different from the standard used for private businesses. *Id.*

> It is not simply what [governmental entities] do that defines their trade, business, or occupation What they are supposed to do is also a determinant. … Moreover, in cases involving government entities, we have consistently considered the laws under which they were created and under which they functioned in determining their trade, business, or occupation.

*Id.*

The City of Richmond is authorized by Virginia Code §§ 15.2-927, 15.2-928, 15.2-930, and 15.2-931, to provide garbage collection and disposal, to provide and operate waste management facilities, and to contract with other entities to provide these services. The City is further authorized by the City Charter and City Code to collect and dispose of garbage and operate waste management facilities. Charter, § 2.03(c), Code §§ 30-20, 30-40. As well, the City Code explicitly acknowledges that trash may be brought to the transfer stations by private persons or entities. City Code § 30-40.

The trade, business, or occupation of the City is the collection of garbage and the ultimate disposal of such garbage at a landfill. The City is authorized to operate waste management facilities in order to accomplish the goal of garbage collection and disposal. The Hopkins Road transfer station is an essential part of the City's scheme of collecting garbage and transferring the garbage to landfills. As such, the operation of the Hopkins Road transfer station is a part of the City's trade, business, or occupation.

### Statutory Employees

As to the determination of whether defendants are statutory employees of the City, defendants argue that the "stranger to the work" test should be applied. The plaintiff argues that the court should apply the "actual risk test" as applied in *Lucas v. Lucas*, 212 Va. 561 (1972). That test is applicable to the determination of an employee's entitlement to Workers' Compensation. Specifically, the test is used to determine whether an employee's injury occurred as a part of his employment. The test is not applicable to whether a person or entity is a statutory employee. As such, the "actual risk test" will not be applied in this case.

The "stranger to the work" test should be applied here to determine whether defendants were engaged in the City's trade, business, or occupation and were statutory employees of the City. *See Henderson*; *Fowler*; *Whalen v. Dean Steel Co.*, 229 Va. 164, 327 S.E.2d 102 (1985); *Feitig*. The test is derived from the language of Code § 65.2-309(A), which recognizes the right of an injured worker to maintain a common law action for personal injury against an "other party." *Fowler v. International Cleaning Service*, 260 Va. 421, 425, 537 S.E.2d 312 (2000).

> The test is not whether the owner, by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business, or occupation of the owner. If he is, and in doing the work injures an employee of the owner, then the independent contractor, in the same fashion as any other employee of the owner, is not a third party against whom the injured employee's right of action is preserved; but the employee so injured is limited to the compensation provided by the Workmen's Compensation law....

*Id.* at 428 (citing *Floyd v. Mitchell*, 203 Va. 269, 123 S.E.2d 369 (1962)).

In resolving the issue of whether defendants are strangers to the work of the City, a key consideration is whether, in operating the City's transfer station, defendants are "performing an essential part" of the City's garbage collection and disposal business. *Fowler* at 428.

The situation in *Fowler* is illustrative. In that case, International Cleaning was an independent contractor performing janitorial services for Sears. The Court found that International Cleaning was not a stranger to the work of Sears because janitorial services provided were essential to the business of Sears. *Id*. "The combined efforts of International and Sears were designed to accomplish Sears' goal of making its store clean, attractive, and safe — a goal necessary to the successful operation of Sears' furniture business." *Id*.

The City is in the business of collecting and disposing of garbage at a landfill. The Hopkins Road transfer station is an essential link in the chain required to effectively dispose of garbage. As such, the operation of the Hopkins Road transfer station is a part of the City's trade, business, or occupation. Waste Management runs the Hopkins Road transfer station for the City, pursuant to a City contract, and under City supervision. Waste Management would not be at the transfer station or using the facility but for the City contract.

The plaintiff argues that because a significant portion of the trash dealt with by Waste Management at the Hopkins Road transfer station comes from sources other than the City, Waste Management is engaged in other than City business. The origin of the trash is not pertinent, however, to the determination of whether Waste Management is a stranger to the work of the City. The trade, business, or occupation of the City is, in part, the operation of the Hopkins Road transfer station. It is the operation by Waste Management of the transfer station that is City business, not the specific handling of City trash. The City is authorized to own and operate, or contract with another entity to operate, waste management facilities to achieve the City's goal of the collection and disposal of garbage. The specific compilation of trash at the transfer station is thus not relevant to the determination that Waste Management is engaged in the City's trade, business, or occupation.

Waste Management is engaged in the trade, business, or occupation of the City and thus is not a stranger to the work of the City. The employees of Waste Management who operate the Hopkins Road transfer station, specifically defendant Peterson, are thus also engaged in the trade, business, or occupation of the City.

Clark, a trash hauler for Renegade, the independent company hired by Waste Management to haul trash from the transfer station to the landfills, is also engaged in the trade, business, or occupation of the City. Operation of the

Hopkins Road transfer station necessarily includes removing the trash from the facility to landfills. The contract between the City and Waste Management requires that the trash brought to the transfer station be hauled to a landfill the same day. As such, hauling trash from the transfer station to the landfills is an essential part of the garbage collection and disposal business of the City. Clark performs this essential part and is thus not a stranger to the work of the City.

Defendants Clark, Peterson, and Waste Management are not strangers to the work of the City and are thus statutory employees of the City.

For the foregoing reasons, the court finds that the defendants are not an "other party" within the meaning of Va. Code, § 65.2-309. The plaintiff is therefore barred from recovery under his common law cause of action against Waste Management, Peterson, and Clark, and plaintiff's sole remedy is under the Workers' Compensation Act.

It is therefore, ordered that the Special Plea in Bar based on the Workers' Compensation Act filed by defendants USA Waste of Virginia, Inc., Waste Management of Virginia, Inc., USA Waste Management, Inc., Waste Management, Inc., Waste Management of Delaware, Inc., USA Waste Services, Inc., Craig Peterson, Michael A. Clark, Renegade Express, Renegade Express, Ltd., and Stephen R. Adkins, individually and trading as Renegade Express and/or Renegade Express, Ltd., is sustained. It is further ordered and declared that the action against defendants USA Waste of Virginia, Inc., Waste Management of Virginia, Inc., USA Waste Management, Inc., Waste Management, Inc., Waste Management of Delaware, Inc., USA Waste Services, Inc., Craig Peterson, Michael A. Clark, Renegade Express, Renegade Express, Ltd., and Stephen R. Adkins, individually and trading as Renegade Express and/or Renegade Express, Ltd., be dismissed with prejudice.