# CIRCUIT COURT OF THE CITY OF NORFOLK

Kevin Masterson

v.

American Heavy
Industries et al.

April 12, 2012

Case No. (Civil) CL09-7205

By Judge John R. Doyle, III

Following oral arguments on March 6, 2012, this matter is now before the Court on Defendant American Heavy Industries' (AHI) Plea in Bar asserting that the Plaintiff's sole remedy for his alleged injuries is workers' compensation. As seen below, the ultimate question to be answered in addressing this Plea in Bar is whether Plaintiff Masterson and the involved Defendant AHI employees should be deemed statutory co-employees of the Norfolk Southern Railroad at the time of Masterson's accident.

The relationships among the parties in this type of case vary but fall into three general categories. First is the situation where an employee of a sub-contractor sues the owner. This commonly is referred to as an ascending case. Next is the situation where an employee of the owner sues the sub-contractor or an employee of a sub-contractor. This commonly is referred to as a descending case. Finally, there is the situation where the employee of one sub-contractor sues another sub-contractor or his employee. This commonly is referred to as a pyramid case.

The case presently before the Court is a pyramid situation. Succinctly summarized, Plaintiff Masterson was an employee of Aetna. Masterson worked as part of an Aetna crew under contract to repaint the upper portion of a Norfolk Southern owned coal loader. Of note is that this part of the

coal loader was last painted some twenty years prior. Aetna's paint job was expected to last another twenty years. Aetna's task was to sandblast away the existing lead based paint and repaint with a three-tier system: zinc primer, epoxy intermediate, and urethane topcoat. AHI was under contract with Norfolk Southern to maintain the elevator within the over 200-foot tall coal loader. Masterson claims he was injured when riding in that elevator.

In a 2005 opinion involving a pyramid situation, the Supreme Court referenced prior cases involving all three scenarios and summarized the analysis to be applied as follows:

> An employee subject to the provisions of the Workers' Compensation Act cannot file an independent tort action against his employer or any fellow employee for injuries received in the course of employment. Code § 65.2-307; *Pfeifer v. Krauss Const. Co.*, 262 Va. 262, 266, 546 S.E.2d 717, 719 (2001). Under certain circumstances, Code § 65.2-302 extends this immunity from tort liability arising from workplace accidents to qualifying employers, even though no direct common law contract of employment exists between such employers and employees. An employer qualifies for this immunity if the employer, acting as a general contractor, contracts with another to perform all or part of the employer's trade, business, or occupation. Under these circumstances, the employer is deemed the statutory employer of the employees of such other subcontractor and the remedies under the Act are the statutory employees' exclusive remedy against the statutory employer. See *id.*; *Evans v. Hook*, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990); *Smith v. Horn*, 232 Va. 302, 306, 351 S.E.2d 14, 16 (1986). Similarly, employees of different subcontractors who are working on the same project and are also engaged in the general contractor's trade, business, or occupation are considered statutory fellow employees and are entitled to protection from an independent tort action for injuries allegedly caused by either of them. *Pfeifer*, 262 Va. at 266-67, 546 S.E.2d at 719; *Evans*, 239 Va. at 131, 387 S.E.2d at 779.
>
> Applying these principles to this case, if at the time of Hudson's injury, Hudson and Jarrett were working on the same project and were also engaged in the trade, business, or occupation of VIT, Hudson and Jarrett would be statutory fellow employees and Hudson's third-party tort action against Jarrett and Cooper could not proceed. Whether a person is a statutory employer presents a mixed question of law and fact and must be decided on the facts and circumstances of each case. See *Bosley v. Shepherd*, 262 Va. 641, 648, 554 S.E.2d 77, 81 (2001); *Fowler v. International Cleaning Serv.*, 260 Va. 421, 425, 537 S.E.2d 312, 314 (2000).

*Hudson v. Jarrett*, 269 Va. 24, 29-30, 606 S.E.2d 827, 829 (2005).

Earlier this year, the Supreme Court revisited this area of law (albeit in a public utility situation), summarizing the analysis as follows:

> The sole issue before this Court is whether the circuit court erred in determining that Britt and CP&O were statutory employees of the VPA. "The rights and remedies provided in the Virginia Workers' Compensation Act (the Act) are exclusive of all other rights and remedies for employees who fall within the scope of the Act." *Burch v. Hechinger Co.*, 264 Va. 165, 168, 563 S.E.2d 745, 747 (2002). Thus, "[t]he issue whether a particular person or entity is the statutory employer of an injured employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined under the facts of each case." *Bosley v. Shepherd*, 262 Va. 641, 648, 554 S.E.2d 77, 81 (2001).
>
> The definition of a statutory employer is found in Code § 65.2-302(A), which states: When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.
>
> Recognizing that not every statutory employer/employee relationship fits neatly within the parameters of the Code, this Court has developed a number of tests as guides to aid with the proper application of Code § 65.2-302(A). See, e.g., *Cinnamon v. IBM Corp.*, 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989) (recognizing that the normal work test "is only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case"). Two of these tests, the normal work test[1]

---

[1] The normal work test was recognized by the Court in *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972)."[The] test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors. *Id.* at 722, 187 S.E.2d at 167 (quoting 1A Arthur Larson, *The Law of Workmen's Compensation*, § 49.12)."

and the governmental entity test[2] are discussed at great length by the parties in this case. Moore, however, contends that neither the normal work test nor the governmental entity test is dispositive as there was no contract between Britt or CP&O and the VPA. We agree.

What they are supposed to do is also a determinant. Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means. *Id.* at 383, 355 S.E.2d at 599-600.

The plain language of Code § 65.2-302(A), establishes that two discrete elements must be present for a statutory employer/employee relationship to exist: (1) the work must be part of the owner/contractor's trade, business, or occupation, and (2) the owner/contractor must have contracted with another to have work performed.

As we explained in *Henderson v. Central Telephone Co. of Va.*, 233 Va. 377, 383, 355 S.E.2d 596, 599 (1987) "[t]he [normal work] test is merely an approach that is useful in determining an entity's trade, business, or occupation." It is axiomatic then that the governmental entity test, as a counterpart to the normal work test, is a similarly useful approach for determining a governmental entities' trade, business, or occupation.

*Moore v. Virginia Int'l Terminals, Inc.*, 283 Va. 232, 235-37, 720 S.E.2d 117, 118-19 (2012).

In *Clean Sweep v. Talley*, 267 Va. 210, 591 S.E.2d 79 (2004), a pyramid case, the Court discussed the test in this fashion:

The only exception to this exclusivity provision is provided in Code § 65.2-309(A) permitting an action to be maintained against an "other party" "To be an 'other party' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured." 262 Va. at 525, 551 S.E.2d at 329. Additionally, we have held:

Because he is not a "stranger to the employment," an allegedly negligent employee of one contractor, engaged in the same business or project of an owner as an injured employee of another contractor, is not an "other party" amenable to suit. . . .

---

[2] Recognizing the limitations of applying the normal work test to governmental entities, the Court established the governmental entity test in *Henderson v. Central Telephone Co. of Va.*, 233 Va. 377, 355 S.E.2d 596 (1987). It is not simply what [governmental entities] do that defines their trade, business, or occupation. What they are supposed to do is also a determinant. Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means. *Id.* at 383, 355 S.E.2d at 599-600.

*Evans v. Hook*, 239 Va. 127, 131 S.E.2d 777, 779 (1990). *See also Pfeifer v. Krauss Construction Co.*, 262 Va. 262, 266-67, 546 S.E.2d 717, 719 (2001).

The initial question then is whether Masterson was a statutory employee of Norfolk Southern when working on the Aetna paint crew, for, if Masterson was a stranger to the work of Norfolk Southern, he necessarily also was a stranger to the work of AHI.

AHI describes this painting project as maintenance of the coal loader. AHI points to the *Stewart* case, a descending case, for the proposition that all repairs and maintenance always are considered a part of the trade, occupation, or business of a company and employees performing such work are never a stranger to the work of the owner. *Stewart v. Bass Construction Co.*, 223 Va. 363, 288 S.E.2d 489 (1982). Plaintiff Stewart worked for Federal, a company that manufactured pulp and paper products. As a part of its business, Federal purified water using 2000 pound aerators installed in lagoons. Defendant Bass was primarily engaged in construction work, but it also provided cranes and operators to Federal from time to time for use in certain projects, including the removal of this aerator from the lagoon for repairs. Three Federal employees and Bass' crane operator participated in moving the aerator. Stewart, a Federal employee, was present and actively in charge of the operation. Stewart was injured when the boom of the crane became entangled in overhead electric lines.

In finding that Bass was not a stranger to the trade, occupation, or business of Federal, the Court placed emphasis not upon the fact that this was a repair or maintenance, but upon the fact that Bass *was assisting Federal employees* in performing *"normal" "routine"* maintenance activity. *Stewart*, 223 Va. at 367, 288 S.E.2d at 491. There would be no reason for the Court to describe the activity as such if all maintenance or repair was always a part of the trade of the owner as AHI suggests.

The Court distinguished those facts in *Stewart* from *Bassett. Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). Bassett, a furniture manufacturing company, utilized its own workers to perform normal maintenance and construction in its plant, but hired an outside contractor, Industrial Air, Inc., to build a conveyor belt system as part of a renovation enlarging the plant. McReynolds, an Industrial employee, was injured when he fell through a hole in the floor cut to accommodate the conveyor belt. The hole was actually cut by a Bassett employee at the direction of Industrial. The Court held that the specialized construction of the conveyor belt system was not part of Bassett's normal business. *Bassett*, 216 Va. at 904, 224 S.E.2d at 327.

The *Stone* case is similar factually to *Bassett. Stone v. Door-Man Manufacturing Co.*, 260 Va. 406, 537 S.E.2d 305 (2000). The Plaintiff was an employee in a Ford truck assembly plant. He was injured when an overhead door unexpectedly closed and struck him. This event occurred

in a former warehouse that had been remodeled and enlarged during a recent renovation of the assembly plant. Stone sued various outside entities who were involved in the renovation project that included the design and installation of the overhead door. The Court found that the parties engaged in the design and installation of the door were not engaged in the business of the Ford plant. *Stone,* 260 Va. at 419, 537 S.E.2d at 311. The Court also indicated that whether it applied the "stranger to the work" or "normal work" tests the result was the same.

AHI distinguishes *Bassett* and *Stone* from the present case because they are "construction" cases, not "maintenance" cases. AHI argues that, in pyramidal relationship cases, persons performing any type of maintenance are never found to be strangers to the work of the owner. This Court reviewed numerous cases involving all sorts of permutations and scenarios and does not agree that any such bright line distinction can be found in the case law. A sampling of cases broken down categorically as follows: (1) Pyramid Cases: *Clean Sweep Professional Parking Lot Maintenance, Inc. v. Talley,* 267 Va. 210, 591 S.E.2d 79 (2004); *Pfeifer v. Krauss Construction of Va., Inc.,* 262 Va. 262, 546 S.E.2d 717 (2001); *Nichols v. VVKR, Inc.,* 241 Va. 516, S.E.2d 698 (1991); *Evans v. Hook,* 239 Va. 127, 387 S.E.2d 777 (1990); *Smith v. Horn,* 232 Va. 302, 351 S.E.2d 149 (1986); *Anderson v. Thorington Construction Co.,* 201 Va. 266, 110 S.E.2d 396 (1959); *Lincoln v. International Speedway Corp.,* 59 Va. Cir. 133 (Richmond 2002); (2) Ascending Cases: *Henderson v. Central Tel. Co.,* 233 Va. 377, 355 S.E.2d 596 (1987); *Bassett Furniture v. McReynolds,* 216 Va. 897, 224 S.E.2d 323 (1976); *Johnson v. Jefferson National Bank,* 244 Va. 482, 422 S.E.2d 778 (1992); *Cinnamon v. International Business Machines,* 238 Va. 471, 384 S.E.2d 618 (1989); *Shell Oil Co. v. Leftwich,* 212 Va. 715, 187 S.E.2d 162 (1972); *Sears, Roebuck & Co. v. Wallace,* 172 F.2d. 802, 810 (4th Cir. 1949); *Fose v. Gwaltney of Smithfield,* 67 Va. Cir. 347 (Portsmouth 2005); *Baker v. Rubbermaid Commercial Products, Inc.,* 30 Va. Cir. 147 (Winchester 1993); *Pendleton v. Harcos Lumber & Building Supplies, Inc.,* 47 Va. Cir. 455 (Roanoke 1998); (3) Descending Cases: *Stewart v, Bass Construction Co.,* 223 Va. 363, 288 S.E.2d 489 (1982); *Fowler v. International Cleaning Service, Inc.,* 260 Va. 421, 537 S.E.2d 312 (2000); *Stone v. Door-Man Manufacturing Co.,* 260 Va. 406, 537 S.E.2d 305 (2000); *Anderson v. Dillow,* 262 Va. 797, 553 S.E.2d 526 (2001); *Farish v. Courion Industries, Inc.,* 722 F.2d. 74 (4th Cir. 1983); *Doane v. E. I. Dupont De Nemours & Co.,* 209 F.2d 921 (4th Cir. 1954). Indeed, on numerous occasions the Supreme Court has cautioned just the opposite. Note that in a 1983 "descending case," the Fourth Circuit observed a general rule differing from the one AHI propounds, "A surprising number of cases in jurisdictions honoring the "statutory employer" rule have involved subcontracted maintenance activities. The general rule is that 'major repairs, or specialized repairs of the sort which the employer is not equipped to handle with his own

force, are held to be outside his regular business'. . . ." *Farish v. Courion Industries, Inc., and Otis Elevator Co.*, 722 F.2d 74 (4th Cir. 1983).

AHI further cites a long line of cases for the proposition that pyramidal relationships normally result in a finding that each subcontractor is engaged in the normal business activity of the owner. However, the facts of many of these cases demonstrate that the controlling factor is not the relationship between the parties but the nature of the activity.

As stated in *Nichols v. VVKR, Inc.*, 241 Va. 516, 403 S.E.2d 698 (1991), a "pyramid" case, "many activities may be important to the success of the business, but would not necessarily constitute the trade, business, or occupation of the owner" and "providing or acquiring this facility is incidental to – perhaps necessary to – conduct of the owner's business, but adaptation of the facility so as to permit conduct of the intended activity is not itself the trade, business, or occupation of the owner." This is contrary to AHI's contention during oral argument that any sub-contractor activity that advances the mission of the owner is part of the trade, business, or occupation of the owner.

In this particular case, whether the test is termed the "normal work" test (as advocated by Masterson) or the "stranger to the work" test (as advocated by the AHI), the result is the same. The essential question is whether a once every two decades specialized painting project on one of its major pieces of machinery is part of the trade, business, or occupation of Norfolk Southern.

Clearly, Norfolk Southern concluded that the time had come to repaint this crucial piece of machinery and that this project was beneficial to the company, as evidenced by the $374,630 Aetna price tag. But this does not mean that the execution of the project was part of Norfolk Southern's trade, business, or occupation. Indeed, AHI describes this project as "maintenance," but *"preservation"* is a more exact description ("1. to keep alive or in existence; make lasting; 2. to keep safe from harm or injury; save." *Webster's Unabridged Dictionary* 1138 (1989)). The substitution of that more appropriate word encapsulates why this project cannot accurately be described as part of the trade, business, or occupation of Norfolk Southern.

Aetna supplied its own specially trained crew. Aetna supplied all of its own materials and specialized equipment. This is quite distinguishable from the routine maintenance found in *Fowler v. International Cleaning Serv.*, 260 Va. 421, 537 S.E.2d 312 (2000), and much more similar to the activity found in *Bassett* and *Stone*.

Aetna paints everything from roller coasters to bridges to the Norfolk Southern coal loader. In painting the coal loader, their employees were no more engaged in the business of moving coal from a mine to a collier than they were engaged in the amusement park business by painting a roller coaster under similar circumstances. Routine maintenance activities on a coal loader or a roller coaster necessary to keep it functioning properly may

be part of the trade, business, or occupation of the owner, but the highly specialized and infrequently performed preservation painting project done by Aetna for Norfolk Southern was not part of the trade, business, or occupation of Norfolk Southern.

The Court therefore finds that Plaintiff Masterson was a stranger to the work of Norfolk Southern and therefore not a statutory employee of Norfolk Southern. The Court denies AHI's Plea in Bar.