# Debbra Lynn Roberts

## v.

# City of Alexandria

Record No. 920856

June 11, 1993

Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

18

*Nina J. Ginsberg (DiMuro, Ginsberg & Lieberman*, on brief), for appellant.
*Philip Sunderland, City Attorney (George McAndrews, Assistant City Attorney*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this personal injury suit against a municipality brought by an employee of an independent contractor providing medical services at the municipality's detention center, the broad question is whether the employee's common-law action is barred on the ground that her exclusive remedy is under the Workers' Compensation Act (the Act). More precisely, the issue is whether the municipality was the plaintiff's statutory employer under the Act.

In 1987, the Sheriff of the City of Alexandria executed a contract with ARA Health Services, Inc., doing business as Correctional Medical Systems, Inc. (CMS), for CMS to provide health care services at Alexandria's Adult Detention Center. The contract required CMS to deliver medical, dental, and related health care and administrative services to jail inmates.

On January 5, 1988, about 2:30 a.m., the plaintiff, a CMS employee assigned as a licensed practical nurse at the center, had completed her duties and was walking to her car parked in the employee parking lot. Due to allegedly poor lighting and slippery conditions caused by ice and snow, the plaintiff fell in the lot and was injured.

Subsequently, the plaintiff, who receives workers' compensation benefits for her injury through CMS, filed this damage suit against the City alleging negligent maintenance of the premises where she

fell. Responding, the City filed a special plea asserting that it was immune from suit because the plaintiff was a statutory employee of the City and the plaintiff's sole remedy was under the Act. Following a hearing at which the trial court considered the CMS contract and deposition testimony from a representative of the City's Office of Management and Budget, the court sustained the plea. We awarded the plaintiff an appeal from the court's March 1992 order dismissing the action with prejudice.

The crucial inquiry is whether the provision of medical services at the correctional center, contracted for by the Sheriff, is a part of the "trade, business or occupation" of the City within the meaning of former Code § 65.1-29 (now § 65.2-302(A)). The plaintiff contends that the work she performed, "the delivery of health care services at the Alexandria jail, was not a duty imposed by law upon the City, or one over which the City exercised any authority or means of control. The Sheriff, on the other hand, is mandated by law to provide these services." Thus, according to the plaintiff, the delivery of medical services at the jail is part of the trade, business, or occupation of the Sheriff, not the City of Alexandria, and her action is not barred. We do not agree.

The statutory-employer test applied to governmental entities differs from that usually applied to private business entities. *Ford* v. *City of Richmond*, 239 Va. 664, 666, 391 S.E.2d 270, 271 (1990). When governmental entities and public utilities are involved, "It is not simply what they do that defines their trade, business, or occupation. What they are supposed to do is also a determinant." *Henderson* v. *Central Tel. Co.*, 233 Va. 377, 383, 355 S.E.2d 596, 599-600 (1987). A private business entity is essentially self-defining in terms of its trade, business, or occupation, but a governmental entity has duties, obligations, and responsibilities imposed upon it by statutes and charter provisions. *See id.* Consequently, local governments' trade, business, or occupation must be judged according to the public duties they are "authorized and empowered by legislative mandate to perform." *Ford*, 239 Va. at 669, 391 S.E.2d at 273. *See Nichols* v. *VVKR, Inc.*, 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991).

The City of Alexandria clearly is authorized and empowered to provide medical services to the jail's inmates. The City owns the jail under the statutory mandate that the "governing body of every county and city shall provide . . . a jail." Code § 15.1-257. Even though the Sheriff, a constitutional officer, operates the jail, Code

§§ 53.1-116 to -118, and provides medical services to the jail popu-
lation, Code § 53.1-126, the costs of operating the jail, paid in part
by the state, ultimately are the responsibility of the City. According
to the evidence, the funding for the Sheriff's operation of the jail is
provided, in part, from the City's general fund revenues. Indeed, the
record shows that the City pays the whole cost of the medical ser-
vices provided to the jail inmates under the CMS contract.

■ As the City argues, the fact that the Sheriff, rather than the
City, actually operates the jail does not negate the City's authority
to do so itself. Code § 15.1-882 specifies that a "municipal corpora-
tion may provide and operate . . . detentive, correctional and penal
institutions; or may contract with others for supplying the services
and facilities provided at such institutions." Likewise, the Alexan-
dria City Charter empowers the City to "establish, maintain and
operate . . . a jail for the confinement of prisoners." Alexandria,
Va., Charter § 2.05(e) (Michie City Pub. Co. 1963). Implicit in the
power to operate the jail is the responsibility to provide medical ser-
vices for the inmates. Thus, because the City is authorized and
empowered to operate the jail, and to provide medical services
there, the delivery of those medical services are within the City's
trade, business, or occupation.

This conclusion is buttressed by reference to the Act. Former
Code § 65.1-4 defines the term "employee" for purposes of work-
ers' compensation. Relating to municipal corporations, the statute
provides that the term "employee" includes "sheriffs and their
deputies" who "shall be deemed to be employees of the respective
cities, counties or towns in which their services are employed and
by whom their salaries are paid or in which their compensation is
earnable" (now in substance § 65.2-101).

The City represents that, pursuant to this statute, it provides
workers' compensation coverage to the Sheriff's employees as if
they were the City's own employees. And, employees of the Sheriff
who are injured on the job are entitled to workers' compensation
benefits payable "entirely by the City," it asserts, and thus may not
pursue tort actions against the City. *See* former Code § 65.1-40
(now § 65.2-307) (employee's rights under Act exclude all other
rights and remedies). The evidence showed that in the five fiscal
years 1986 through 1990, the City paid in excess of $192,000 in
workers' compensation benefits to employees of the Sheriff's
office, none of which was reimbursed by the state.

■ Implicit in the legislative directive that the Sheriff's employees be included in the City's workers' compensation program is the recognition that these employees are engaged in the City's trade, business, or occupation. And, of course, this conclusion applies equally to employees, like the plaintiff, of independent contractors, like CMS, with whom the Sheriff has contracted to perform the Sheriff's duties in lieu of his own employees.*

■ Finally, there is no merit to the plaintiff's contention, relying on *Nichols* v. *VVKR, Inc.*, *supra*, that the City is not an "owner" of the jail, as that term is used in Code § 65.1-29, and thus the City cannot be her statutory employer under the Act. In the first place, the introductory language of § 65.1-29, "When any person (in this section . . . referred to as 'owner') undertakes to perform or execute any work . . . ," does not require a person or entity to be an "owner" to be a statutory employer. The term "owner" is used merely to refer to the person or entity who may qualify as a statutory employer.

In the second place, *Nichols* is inapposite. There, the question was whether the injured employee and the allegedly negligent engineering firm were "statutory fellow employees" under the Act, 241 Va. at 518, 403 S.E.2d at 699, an issue not presented here. In *Nichols*, it became necessary to identify the "owner" of an urban rehabilitation project to determine whether both parties were engaged in the trade, business, or occupation of that "owner." This case does not involve a construction project and, even if the question of ownership is relevant, the City owns the jail and the land on which it stands.

Consequently, we hold that the trial court did not err in sustaining the special plea. Therefore, the judgment appealed from will be

*Affirmed.*

---

*We do not decide whether the City's contracting procedures, which apparently require CMS to provide workers' compensation coverage for their employees, fulfill the City's obligation to provide such coverage.