Present: All the Justices

ROBERT BOSLEY, ET AL.

v. Record No. 002735   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    November 2, 2001
MICHAEL A. SHEPHERD, et al.

                FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          A. Bonwill Shockley, Judge

    In this appeal, we consider issues arising from the trial

of a personal injury action brought by a worker against the

general contractor of a construction project, one of the general

contractor's employees, and a steel erection subcontractor.

    Michael A. Shepherd was injured in November 1996 while

using a boom crane to deposit gypsum sheathing (sheetrock) into

a second-floor opening of a building under construction at the

Dam Neck Naval Installation in Virginia Beach.  The United

States Navy, owner of the construction project, entered into a

contract with W.B. Meredith, II, Inc. (Meredith), which provided

for Meredith's services as general contractor of the project.

Meredith contracted with various subcontractors to provide

certain construction services, including Virginia-Carolina

Steel, Inc., to perform the steel fabrication and erection

portion of the general contract.  Virginia-Carolina Steel, in

turn, contracted with Atlantic Welding & Fabricating, Inc.

(Atlantic Welding) to provide the steel erection work for the project.

Additionally, Meredith contracted with Wenger Tile and Plastering Co., Inc. (Wenger) for the drywall installation portion of the general contract. Wenger contracted with Gypsum Management & Supply, trading as Tidewater Interior Products (TIP), a drywall company and supplier of sheetrock, to supply sheetrock for the construction project. TIP employed Shepherd to transport the sheetrock to the construction site and to operate TIP's boom crane, which was used to place the sheetrock at specific locations at the site.

Upon arrival at the construction site, Shepherd's co-worker, Christopher Scott Hewitt, contacted Wenger's project superintendent, Jonathan McGowan, Jr., and Wenger's foreman, Darrell Ashley, to receive instructions concerning "offloading" the sheetrock. Hewitt, McGowan, and Ashley conferred with Meredith's construction superintendent and co-defendant, Robert J. Bosley, to determine the proper locations at which to place the sheetrock.

Shepherd used a TIP truck to deliver the loads of sheetrock to the project site. At the site, he used a hydraulic boom crane, mounted on top of the truck, to lift and place several bundles of sheetrock, called "hacks," onto the first and second floors of the open structure. At the direction of McGowan and

Ashley, Shepherd later moved his boom crane to the southeast corner of the structure to place additional hacks in a different location on the second floor.

Shepherd's ability to maneuver the crane's boom arm inside the second-floor opening was restricted by a horizontal steel girt. The steel girt was a hollow square beam that was placed on brackets several feet above the floor across the top of the opening of the second deck of the structure. The brackets were attached to the vertical steel columns of the structure. The girt was about 29 feet long and weighed about 1700 pounds. The distance between the girt and the ground was about 20 feet.

In order to move the sheetrock hacks to the designated second-floor location, it was necessary for Shepherd to insert and retract the boom arm in between the girt and the second floor. When performing this maneuver, Shepherd had a clearance space of between three and four inches from the top of the boom arm to the bottom of the steel girt.

On Shepherd's first attempt to maneuver the boom arm into this opening, he successfully unloaded two hacks of sheetrock. On Shepherd's second attempt, he deposited two more hacks. As the boom arm retracted, it made contact with the steel girt.

Hewitt observed that the steel girt was "teetering" on top of the boom arm between six and seven inches off the girt's brackets. Hewitt shouted to Shepherd to alert him to the

dangerous situation. As Shepherd attempted to jump out of the crane operator's chair, the girt slid down the crane's arm and struck him, causing him serious injuries.

Shepherd filed a motion for judgment in the trial court against Meredith, Bosley, and Atlantic Welding, alleging that he was seriously injured as a result of the defendants' negligence. Shepherd alleged, among other things, that the defendants were negligent in failing to secure the girt adequately to its brackets, and in failing to warn all others on the construction site that the girt was not properly secured.

At trial, Hewitt and McGowan testified that Bosley was told that some sheetrock hacks would be placed on the second floor at the southeast corner of the structure. Hewitt stated that Bosley gave Hewitt permission to remove the safety cable at the southeast opening on the second floor to prevent the cable from obstructing the path of the boom arm.

Shepherd also presented evidence that the steel girt in question was not "tack welded" or otherwise secured to its brackets. A tack weld is a temporary weld used by steel erection workers to hold a girt in place until it is properly aligned with other girts throughout the structure. Once all the girts are properly aligned, they are secured with permanent welds.

Manuel Seoane, a safety investigator for the Navy, testified that his inspection of the girt struck by the boom arm, and the bracket on which the girt was placed, revealed no evidence of any welding. Seoane concluded that the girt fell because it had not been "tacked into position and secured." Seoane also stated that Peter G. Godfrey, a foreman for Atlantic Welding, admitted that the girt that struck Shepherd had not been tack welded. However, Godfrey testified that when he made this statement, he was referring to permanent welding, not tack welding.

Shepherd presented the expert testimony of Frank Burg, an occupational safety and health consultant. The defendants filed a motion in limine, requesting that Burg be prohibited from testifying that the defendants violated the Occupational Safety and Health Act of 1970 (OSHA). 29 U.S.C. §§ 651 through 700 (1994). The defendants argued, among other things, that "Burg has not identified any specific code, regulation or standard of any type that addresses the erection and placement of steel girts of the type that injured [Shepherd]." The trial court denied the defendants' motion.

Burg testified that the defendants violated 29 U.S.C. § 654, OSHA's "general duty" clause, which he stated requires an employer to keep the workplace free from recognized hazards that could cause death or serious physical harm. Burg also stated

that he considers an OSHA violation to have occurred whenever someone is seriously injured on a job, unless the injury was caused by employee misconduct or an "act of God."

Burg concluded that Shepherd's accident could have been prevented if the defendants either had secured the girt or had blocked access to the area beneath the girt. Burg testified that Meredith, as the general contractor, had the responsibility under OSHA to ensure that the staging and coordination of work on the job site was performed in accordance with applicable safety standards. Burg stated that OSHA required the defendants to analyze safety hazards and to implement and follow a work safety program. Burg opined that if there had been an adequate safety program in place and if sufficient inspections had been made, the accident would not have occurred.

During the defendants' case, Bosley testified that he did not instruct Hewitt, McGowan, or Ashley to deposit sheetrock at the southeast corner of the second floor, and that he did not authorize the removal of any safety cables at that location. Bosley further stated that he thought that the girt in question was secured properly by a weld.

The defendants also presented evidence that the girt was tack welded to its brackets. Frankie L. Brock, an ironworker for Atlantic Welding, testified that he personally tack welded

6

the steel girt, and that he was "positive" that he secured the girt in this manner at both ends.

In addition, the defendants presented testimony from experts in the steel erection and welding industries. These experts included Richard Leland, a registered civil engineer, Brock, and Edwin W. Shelton, owner and president of Virginia Steel. These experts testified that photographs taken of the girt immediately after the accident revealed burn marks and other indications of tack welding.

The jury returned a verdict for Shepherd against Bosley and Meredith and awarded damages in the amount of $325,000. The jury also returned a verdict in favor of Atlantic Welding. The trial court denied the motion of Bosley and Meredith to set aside the verdict and entered final judgment in accordance with the verdict. Bosley and Meredith appealed from this judgment.

On appeal, Bosley and Meredith (collectively, the defendants) argue that Shepherd was the statutory employee of Meredith under the Virginia Workers' Compensation Act (the Act), Code §§ 65.2-100 through -1310 and, thus, was barred from bringing a common law negligence action against the defendants. They contend that Shepherd was engaged in an act of construction, rather than of delivery of materials, at the time he was injured because he was required to use "specialized" equipment at different locations on the job site to deposit the

sheetrock.  The defendants assert that Shepherd's use of a boom crane distinguishes the present case from our decisions that have held that the mere delivery of construction materials to a job site does not constitute part of a general contractor's trade, business, or occupation.  We disagree with the defendants' arguments.

The exclusivity provision of the Act, which is found in Code § 65.2-307, limits the rights and remedies of an employee to those provided in the Act when he and his employer have accepted the provisions of the Act for payment of compensation for accidental injury or death.  Fowler v. Int'l Cleaning Serv., Inc., 260 Va. 421, 425, 537 S.E.2d 312, 313 (2000); Stone v. Door-Man Mfg. Co., 260 Va. 406, 412, 537 S.E.2d 305, 307 (2000). However, the exclusivity provision does not bar a common law action for an employee's injury or death against an "other party," as construed under the Act.  Code § 65.2-309; Fowler, 260 Va. at 425, 537 S.E.2d at 314; Stone, 260 Va. at 412, 537 S.E.2d at 307-08; Stewart v. Bass Constr. Co., 223 Va. 363, 365-66, 288 S.E.2d 489, 490 (1982).

The issue whether a particular person or entity is the statutory employer of an injured employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined under the facts of each case.  See Fowler, 260 Va. at 425, 537 S.E.2d at 314; Stone, 260 Va. at 413, 537 S.E.2d at

8

308; Cooke v. Skyline Swannanoa, Inc., 226 Va. 154, 156, 307 S.E.2d 246, 247 (1983). Since the facts before us regarding this issue are not in dispute, we examine whether the trial court correctly applied the law to those facts. See Fowler, 260 Va. at 425, 537 S.E.2d at 314; Stone, 260 Va. at 413, 537 S.E.2d at 308; Cinnamon v. Int'l Bus. Machs. Corp., 238 Va. 471, 474, 384 S.E.2d 618, 619 (1989).

A general contractor is the statutory employer of a subcontractor's injured employee if the employee is engaged in the trade, business, or occupation of the general contractor at the time of his injury. Yancey v. JTE Constructors, Inc., 252 Va. 42, 44, 471 S.E.2d 473, 474 (1996); Sykes v. Stone & Webster Eng'g Corp., 186 Va. 116, 121-22, 41 S.E.2d 469, 472 (1947). However, when an injured employee reaches an employer in the ascending hierarchy of contractors whose trade, business, or occupation does not include the work being performed by the injured employee, that employer is not the statutory employer of the injured employee. Yancey, 252 Va. at 44, 471 S.E.2d at 474; Sykes, 186 Va. at 121-22, 41 S.E.2d at 472.

We have held repeatedly that a subcontractor's employee who merely delivers materials to a job site is not engaged in the trade, business, or occupation of the general contractor. Yancey, 252 Va. at 44, 471 S.E.2d at 474-75; Hipp v. Sadler Materials Corp., 211 Va. 710, 711, 180 S.E.2d 501, 501-02

9

(1971); Burroughs v. Walmont, Inc., 210 Va. 98, 100, 168 S.E.2d 107, 108 (1969); see Peck v. Safway Steel Prods., Inc., 262 Va. 522, 526, 551 S.E.2d 328, 329-30 (2001).  In contrast, when an injured employee's duties extend beyond delivery of materials to the job site, and the employee performs an act that is an essential part of the work of the general contractor, the injured employee has engaged in the trade, business, or occupation of the general contractor.  See Peck, 262 Va. at 528, 551 S.E.2d at 330; Bosher v. Jamerson, 207 Va. 539, 542-43, 151 S.E.2d 375, 377 (1966).

The present case is controlled by our decisions in Yancey, Hipp, and Burroughs.  In all three cases, we held that the injured employees were not engaged in the general contractors' trade, business, or occupation because their activities at the respective job sites constituted final acts of delivery, not acts of construction.  In Yancey, the injured employee's final act of delivery included the inspection and patching of concrete panels delivered to the job site.  252 Va. at 45, 471 S.E.2d at 475.  In Hipp, the injured employee was a mere delivery person because he poured concrete where directed by another subcontractor, but did not engage in spreading or finishing the concrete after it was poured.  211 Va. at 711, 180 S.E.2d at 502.

Our decision in Burroughs was based on facts remarkably similar to those presented here. The plaintiff in Burroughs was an employee of a trucking company hired to deliver sheetrock to a construction site and to stack specific quantities of the material in certain rooms of various houses under construction. The plaintiff was injured while manually carrying some pieces of sheetrock up a stairway in one of the houses. 210 Va. at 99, 168 S.E.2d at 108. We concluded that the plaintiff's act of stacking the sheetrock in the several rooms constituted a final act of delivery, not an act of construction. Thus, we held that the plaintiff was not engaged in the general contractor's trade, business, or occupation, and that the general contractor was an "other party" subject to being sued by the plaintiff in a common law negligence action. Id. at 100, 168 S.E.2d at 108-09.

Like the plaintiff in Burroughs, Shepherd was injured while placing sheetrock at a construction site in locations specified by the general contractor and its employees. The nature of the work that Shepherd performed is not altered by the fact that he used a crane to place the materials at the required locations. His actions remained ones of delivery, not of construction, because when he used the crane to place sheetrock at the specified locations, he did not engage in any other action regarding the sheetrock to further the work of the general contractor. Therefore, we hold that the trial court correctly

11

concluded that Meredith was not Shepherd's statutory employer but was an "other party" subject to being sued by Shepherd in this common law negligence action.

We disagree with the defendants' argument that because the Navy is the owner of the Dam Neck project, a different result is required under Roberts v. City of Alexandria, 246 Va. 17, 431 S.E.2d 275 (1993). In Roberts, we held that a governmental owner's trade, business, or occupation is determined by examining the duties that the owner is authorized or required under law to perform. Id. at 19-20, 431 S.E.2d at 276-77.

We first observe that once Shepherd reached Meredith in the ascending hierarchy of contractors, and established that he was not performing work at the time of the accident that was part of Meredith's trade, business, or occupation, Shepherd conclusively proved that Meredith was not his statutory employer. See Yancey, 252 Va. at 44, 471 S.E.2d at 474; Cinnamon, 238 Va. at 475 n.1, 384 S.E.2d at 619 n.1; Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897, 901-02, 224 S.E.2d 323, 326 (1976); Sykes, 186 Va. at 122-23, 41 S.E.2d at 472. Thus, the owner of the project, who was above Meredith in the ascending hierarchy, likewise was not Shepherd's statutory employer. However, even if we assume, without deciding, that the Navy's trade, business, or occupation is relevant to an analysis of Meredith's status as an "other party" under the Act, we reach the same result.

Under the United States Code, the Navy is authorized to conduct various activities including the construction, maintenance, and repair of buildings and structures. 10 U.S.C. § 5013(b)(12)(1994). However, under the Act, the mere delivery of materials to a job site is not an act of construction constituting the trade, business, or occupation of either a general contractor or an owner of a construction project. See Yancey, 252 Va. at 44, 471 S.E.2d at 474-75; Hipp, 211 Va. at 711, 180 S.E.2d at 501-02; Burroughs, 210 Va. at 100, 168 S.E.2d at 108. Thus, although the Navy is authorized by law to engage in construction activities, and may sometimes engage in the delivery of materials to a job site, this fact does not alter the relationship of a mere delivery person under the Act to the general contractor of a construction project. Nor does that fact make the mere delivery person the statutory employee of the Navy for purposes of the Act.[1]

The defendants next argue that the trial court erred in allowing Burg to testify that the defendants violated certain general provisions of OSHA when Burg was unable to identify a violation of any specific OSHA standard relating to the placement and erection of steel in a construction project.

---

[1]The Navy's authorization for "supplying" under 10 U.S.C. § 5013(b)(3) does not enlarge the scope of 10 U.S.C. § 5013(b)(12), which is a separate provision addressing a different subject.

Thus, the defendants assert that Burg's testimony improperly implied that the defendants were negligent simply because an accident had occurred on the construction site.

In response, Shepherd argues that Burg's testimony was properly admitted to allow the jury to determine whether and how the defendants violated the provisions of OSHA.  Shepherd asserts that the jury was not required to accept Burg's testimony, which was offered to assist the jury in understanding applicable safety standards.  We disagree with Shepherd's arguments.

We will set forth below the OSHA provisions that formed the basis of Burg's testimony.  OSHA's "general duty" clause, 29 U.S.C. § 654 (1994), provides in relevant part:

(a) Each employer –

(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this chapter.

The second OSHA provision at issue, 29 C.F.R. § 1926.16 (2000), states in relevant part:

In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract. . . . With respect to subcontracted work, the prime contractor and any

14

subcontractor or subcontractors shall be deemed to have joint responsibility.

The third provision at issue, 29 C.F.R. § 1926.21(b)(2000), states in relevant part:

(1) The employer should avail himself of the safety and health training programs the Secretary provides.

(2) The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

Based on the record before us, we conclude that the trial court erred in allowing Burg to testify that the defendants violated these general provisions of OSHA. Burg's testimony that the defendants violated the above provisions was based on Meredith's role as general contractor and its overall duty to keep the workplace free from recognized hazards that could cause death or serious physical harm to employees. Burg stated that, under OSHA, a general contractor has "specific indelible [sic] responsibilities to make sure that there is [a] safety program, that there are safety rules, and that things don't happen such as happened in this case." Burg testified that Meredith's safety measures were inadequate "[b]ecause of the facts of the accident." As stated above, he also explained that, in his opinion, an OSHA violation is committed when an accident causing serious injury occurs, and the accident was not caused by employee misconduct or an "act of God."

15

The jury was permitted to consider this testimony although there was no evidence that the defendants violated any specific duty imposed by OSHA relating to the construction activities that gave rise to this accident. In fact, Shepherd conceded at oral argument in this appeal that OSHA does not contain any such specific provisions that were violated by the defendants. In addition, the record lacks any evidence that the defendants were required by OSHA to take the actions concerning the girt, and the area beneath the girt, that Burg indicated would have prevented the accident.

In the absence of any such specific requirements imposed by OSHA, Burg was permitted to testify, in essence, that the defendants violated OSHA because a serious accident occurred on the job site, and their safety programs and inspections failed to prevent the accident. Such testimony was analogous to suggesting that the defendants were negligent merely because an accident had occurred. Thus, this portion of Burg's testimony violated the longstanding principle that negligence cannot be presumed from the mere happening of an accident. See Gossett v. Jackson, 249 Va. 549, 552, 457 S.E.2d 97, 99 (1995); Parham v. Albert, 244 Va. 73, 76, 418 S.E.2d 866, 868 (1992)(quoting Lawrence v. Snyder, 229 Va. 139, 142, 326 S.E.2d 690, 692 (1985)); Sneed v. Sneed, 219 Va. 15, 17, 244 S.E.2d 754, 755 (1978). Accordingly, we conclude that the trial court erred in

permitting Burg to testify that the defendants violated the above OSHA provisions.[2]

For these reasons, we will affirm in part, and reverse in part, the trial court's judgment and remand the case for a new trial consistent with the principles expressed in this opinion.[3]

<u>Affirmed in part,
reversed in part,
and remanded.</u>

---

[2] We need not determine whether Shepherd was within the class of persons that OSHA was intended to protect. Even if Shepherd was within this class of persons, his evidence failed to show that the defendants violated any requirements imposed by OSHA. <u>See</u> <u>Halterman v. Radisson Hotel Corp.</u>, 259 Va. 171, 177, 523 S.E.2d 823, 826 (2000).

[3] Based on the above holdings and our remand of this case for a new trial, we do not address the defendants' remaining assignments of error.