Present: All the Justices

JAMES HUDSON

v. Record No. 040433    OPINION BY JUSTICE ELIZABETH B. LACY
                                    January 14, 2005
OTHA JARRETT, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

James Hudson, Jr. filed a tort action against Otha Jarrett for injuries Hudson received while he was unloading cargo from a barge docked at a terminal operated by Virginia International Terminals, Inc. (VIT). At the time of the accident Jarrett was unloading cargo from another vessel. The trial court dismissed Hudson's motion for judgment holding that VIT was the statutory employer of both Hudson and Jarrett and therefore the exclusivity provision of the Virginia Workers' Compensation Act, Code § 65.2-307, barred Hudson's tort action. Because VIT was not a party to any contract that required Hudson or his employer to load or unload the barge, VIT cannot be Hudson's statutory employer and we will reverse the judgment of the trial court and remand the case for further proceedings.

FACTS

On July 5, 2001, Hudson was engaged in the loading and unloading of cargo from a barge owned by Columbia Coastal Transport LLC (Columbia). Hudson was an employee of Universal

Maritime Services Corporation (Universal), a stevedoring company. The work was being performed pursuant to a contract between Universal and Columbia. At the same time, Otha Jarrett was unloading a cargo container from another vessel, the M/V Ingrid Oldendorf, pursuant to a contract between Jarrett's employer, Cooper/T. Smith Stevedoring Company, Inc. (Cooper) and the owner of the vessel. Hudson was injured when the vehicle he was driving collided with a similar vehicle driven by Jarrett.

The accident occurred at Norfolk International Terminal, a terminal managed and operated by Virginia International Terminals, Inc. pursuant to a contract with the terminal's owner, Virginia Port Authority (VPA). Hudson collected workers' compensation benefits from his employer under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 (2000) (the Longshore Act). He subsequently filed a motion for judgment against Jarrett and his employer, Cooper, alleging that Jarrett's negligence was the proximate cause of the injuries Hudson sustained.

Prior to trial, Universal and its workers' compensation insurance carrier, Signal Mutual Indemnity Association, Ltd. (Signal), filed a motion to intervene, which the trial court granted over Hudson's objections. Cooper and Jarrett filed a plea in bar asserting that Hudson's tort action was barred by

2

the exclusivity provision of the Virginia Workers'
Compensation Act, Code § 65.2-307, because under Code § 65.2-
302, VIT was the statutory employer of both Hudson and Jarrett
and, therefore, the two workers were "fellow employees."  The
trial court agreed with Cooper and Jarrett, finding that
"Cooper and Universal perform work pursuant to an agreement
with VIT that is a part of the trade, business or occupation
of VIT."  Hudson's motion for judgment was dismissed with
prejudice.  We awarded Hudson an appeal.

I.

An employee subject to the provisions of the Workers'
Compensation Act cannot file an independent tort action
against his employer or any fellow employee for injuries
received in the course of employment.  Code § 65.2-307;
Pfeifer v. Krauss Const. Co., 262 Va. 262, 266, 546 S.E.2d
717, 719 (2001).  Under certain circumstances, Code § 65.2-302
extends this immunity from tort liability arising from
workplace accidents to qualifying employers, even though no
direct common law contract of employment exists between such
employers and employees.  An employer qualifies for this
immunity if the employer, acting as a general contractor,
contracts with another to perform all or part of the
employer's trade, business or occupation.  Under these
circumstances, the employer is deemed the statutory employer

3

of the employees of such other subcontractor and the remedies under the Act are the statutory employees' exclusive remedy against the statutory employer.  See id.; Evans v. Hook, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990); Smith v. Horn, 232 Va. 302, 306, 351 S.E.2d 14, 16 (1986).  Similarly, employees of different subcontractors who are working on the same project and are also engaged in the general contractor's trade, business, or occupation are considered statutory fellow employees and are entitled to protection from an independent tort action for injuries allegedly caused by either of them. Pfeiffer, 262 Va. at 266-67, 546 S.E.2d at 719; Evans, 239 Va. at 131, 387 S.E.2d at 779.

Applying these principles to this case, if at the time of Hudson's injury, Hudson and Jarrett were working on the same project and were also engaged in the trade, business, or occupation of VIT, Hudson and Jarrett would be statutory fellow employees and Hudson's third party tort action against Jarrett and Cooper could not proceed.  Whether a person is a statutory employer presents a mixed question of law and fact and must be decided on the facts and circumstances of each case.  See Bosley v. Shepherd, 262 Va. 641, 648, 554 S.E.2d 77, 81 (2001); Fowler v. International Cleaning Serv., 260 Va. 421, 425, 537 S.E.2d 312, 314 (2000).

At the time of the accident, Hudson was working on loading and unloading cargo from Columbia's barge. The decision to load or unload cargo at the terminal was the decision of Columbia, the vessel owner.[1] Columbia contracted with Universal to perform the stevedoring services necessary to implement this transfer of cargo. VIT was not a party to the contract between Universal and the barge owner for the transfer of the cargo. Furthermore, there is no contract in this record between VIT and Columbia involving the loading or unloading of this specific barge and cargo. In the absence of such a contract between Columbia and VIT, to qualify as Hudson's statutory employer, VIT had to have subcontracted with Universal for the loading and unloading of Columbia's barge.

The trial court concluded that Universal was VIT's subcontractor because Universal was engaged in the execution or performance of the trade or business of VIT. The trial court found that a "principal function (trade or business) of VIT is to move cargo from shore to ship or ship to shore." The trial court found that Universal performed this function

---

[1] Not all vessels berthed at the terminal discharged or took on cargo. See Virginia International Terminals, Inc., Schedule of Rates No. 1, Section 200 (current version available at http://www.vit.org/downloads.doc/tarrif.doc) (hereinafter, "Schedule of Rates").

5

for VIT as a subcontractor, or in other words, pursuant to agreements with VIT.

The contracts identified by the trial court that required Universal and Cooper to move cargo from ship to shore or shore to ship, were (1) "arrangements" with Universal and Cooper governed by VIT's Schedule of Rates; (2) VIT license agreements with both Cooper and Universal "to provide labor at NIT pursuant to the Schedule of Rate[2];" and (3) contracts between VIT and the stevedoring companies "to provide labor pursuant to agreements" with the International Longshoremen's Association (ILA). The trial court also relied on the fact that VIT directly employed ILA members to perform work similar to that done by the stevedoring companies and that the loading and unloading of vessels "generally" involves persons employed by VIT and a stevedoring company, including the operation of cranes by VIT personnel. None of these contracts or agreements, or Schedule of Rates, however, required Universal to load or unload cargo for Columbia's barge or any other vessel.

The Schedule of Rates prescribes certain conditions that must be met by those doing business at any VIT facility. By using the facility, Cooper and Universal agreed to those conditions. However, the Schedule of Rates is not a contract

to perform the actual loading and unloading of any particular vessel.  The contracts to perform those services are the contracts between the ship owners and the stevedore companies.

According to this record, the license agreements between VIT, Cooper, and Universal cited by the trial court are agreements negotiated between VIT and the stevedore companies for the use of designated space in the facility for such things as gear and equipment storage and compliance with environmental regulations and regulations promulgated by VIT and VPA.  These agreements are negotiated between VIT and each stevedore company "for a rate agreed to by the parties."  Thus stevedore companies pay VIT for the right to operate using VIT piers and wharves.  These licensing agreements do not require Universal or Cooper to move cargo from ship to shore or shore to ship for VIT.

Finally, although this record delineating the collective bargaining agreement with the ILA is very slight, VIT and the stevedore companies are parties to such a contract.  The contract appears to require that VIT and the stevedores use ILA members when they are operating at the terminal.  This agreement, like the Schedule of Rates and license agreements, provides general conditions of operation when the stevedore

---

[2] See footnote 1.

7

companies operate; they do not require the stevedores to actually load and unload any cargo.

In the absence of any contractual relationship between VIT and Columbia for the loading and unloading of Columbia's barge, or between VIT and Universal under which Universal agreed to load or unload cargo from the barge or from any vessel, VIT cannot qualify as Hudson's statutory employer. Accordingly, Hudson and Jarrett are not statutory fellow employees and the exclusivity provision of the Workers' Compensation Act does not bar Hudson's tort action against Jarrett and Jarrett's employer, Cooper.

## II.

Because our conclusion requires that the case be remanded for further proceedings, we must address Hudson's second assignment of error in which he claims that the trial court erred in granting Signal's and Universal's motion to intervene.

Universal and Signal filed a motion to intervene pursuant to Rule 3:19. Rule 3:19 provides: "A new party may by leave of court file a pleading to intervene as a plaintiff or defendant to assert any claim or defense germane to the subject matter of the proceeding." Prior to 2000, there was no rule regarding intervention in a law action, but, on the chancery side, a court could allow a "new party" to file a

8

petition asserting "any claim or defense germane to the subject matter" of the litigation. Former Rule 2:15. In 2000, identical rules were adopted for intervention in both law and chancery proceedings. Significantly, the new rules required that an intervenor intervene specifically as a <u>plaintiff</u> or as a <u>defendant</u>. This addition reinforced the interpretation of former Rule 2:15 that an intervenor must be asserting an interest that is part of the subject matter of the litigation.

> Even though leave to amend should be granted liberally by the trial court in furtherance of the ends of justice, Rule 1:8, a new party may not intervene and assert a claim in a pending suit unless the claim is 'germane to the subject matter of the suit.' Rule 2:15. In order for a stranger to become a party by intervention, he must '*assert some right involved in the suit.*' Lile's Equity Pleading and Practice at 91 (3rd ed. 1952).

<u>Layton v. Seawall Enterprises, Inc.</u>*,* 231 Va. 402, 406, 344 S.E.2d 896, 899 (1986).

The claim of the intervenors in this case is limited to the protection of their right to reimbursement from the employee's third-party recovery for the amounts paid in compensation benefits. 33 U.S.C. § 933(f)(2000); <u>Bloomer v. Liberty Mutual Ins. Co.</u>, 445 U.S. 74, 79-88(1980); <u>Peters v. North River Ins. Co.</u>, 764 F.2d 306, 313 (5th Cir. 1985); <u>Nacirema Operating Co. v. Oosting</u>, 456 F.2d 956, 958 n.3 (4th Cir. 1972); <u>The Etna</u>, 138 F.2d 37, 40 (3rd Cir. 1943). In

9

other words, Signal and Universal have a lien on any proceeds Hudson may recover in his action against Jarrett and Cooper, but Signal and Universal do not have a cause of action against Jarrett and Cooper based on Hudson's injuries. 33 U.S.C. § 933(b) (2000); Peters, 764 F.2d at 317.

Under federal law, the intervenors' lien attached automatically to amounts Hudson might recover by judgment or settlement as a result of his action against Jarrett and Cooper. The intervenors can recover without independently proving Jarrett's liability to Hudson. Id. at 320. No issue to be resolved in Hudson's action is affected by the intervenors' lien claim, and no issue resolved in the action will affect the lien claim.

In their motion to intervene and motion for judgment in this case, Signal and Universal did not raise a claim against Hudson, Jarrett, or Cooper. The only relief sought was entry of a judgment against any proceeds awarded to Hudson for the amount of the workers' compensation paid Hudson. Furthermore, on brief and at oral argument, the intervenors stated that they "do not want to participate in the trial." They seek only to "follow" the trial and "be assured" their lien is protected.

While intervention under Rule 3:19 is within the discretion of the trial court, the intervention must meet the

requirements of the Rule.[3]  The allegations of the intervenors here fall far short of showing any claim that they could assert as a plaintiff or defendant that is germane to the issues in the tort case.

We also reject the intervenors' suggestion that because the General Assembly has provided a specific mechanism for the courts to protect the compensation liens of employers and workers' compensation insurance carriers who have paid benefits under the Virginia Workers' Compensation Act, Code § 65.2-309 and -310, it is "reasonable to assume" that the General Assembly "envisioned liens under the Longshore Act as being 'claims' under Rule 3:19."  Rule 3:19 is a specific Rule enacted by this Court to govern the orderliness of proceedings.  As discussed, the Rule's history includes a strong adherence to limiting intervention to those parties who are legitimately plaintiffs or defendants in litigation because the nature of their claim includes some right that is involved in the litigation.  The claims of the intervenors

---

[3] Some federal courts have allowed intervention to protect the compensation lien under Federal Rules of Civil Procedure 24 and some have denied such intervention.  See Lewis v. United States, 812 F. Supp. 629, 631 (E.D.Va. 1993)(allowing intervention under Fed.R.Civ.P. 24(a)(2); The Etna, 138 F.2d at 41 (allowing intervention under Admiralty Rule 34).  Cf. Harris v. Westfal-Larsen & Co., 1964 A.M.C. 21 (N.D. Cal. 1963) (disallowing intervention against third party while recognizing an insurer's right to intervene against longshoreman).

here fail to meet these conditions, and the trial court erred in granting the motions of Signal and Universal to intervene under Rule 3:19.

### III.

In conclusion, for the stated reasons, we hold that the trial court erred in finding that the exclusivity provision of the Virginia Workers' Compensation Act barred Hudson's action against Cooper and Jarrett and in granting the motion of Signal and Universal to intervene under Rule 3:19. Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>