PRESENT: All the Justices

VIRGIL L. MOORE,
ADMINISTRATOR OF THE ESTATE OF
HUGH BRITT, JR., DECEASED

OPINION BY
v.  Record No. 101408                   JUSTICE CLEO E. POWELL
                                        January 13, 2012

VIRGINIA INTERNATIONAL TERMINALS,
INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

Virgil L. Moore ("Moore") appeals the judgment of the

Circuit Court of the City of Portsmouth sustaining the plea in

bar filed by defendants Virginia International Terminals, Inc.

("VIT") and Orion L. Parker ("Parker").  Determining that the

circuit court erred in its ruling that the parties were

statutory employees of the Virginia Port Authority ("VPA") and

therefore subject to the exclusivity provisions of the Virginia

Workers' Compensation Act, we will reverse.

BACKGROUND

The Norfolk International Terminals ("NIT") are owned by

the VPA, a political subdivision of the Commonwealth.  In order

to effectively operate and manage the marine terminal, the VPA

created VIT as a nonprofit, nonstock corporation.  As part of

the contractual relationship between VPA and VIT, VIT was

required to prepare a schedule of rates ("SOR") applicable to

all users of VPA's terminals.  The SOR sets forth the terms and

conditions for use of the terminals.  VIT also offers its services as a stevedore at the marine terminals it operates.

Hugh Britt, Jr. ("Britt"), was employed by CP&O, L.L.C. ("CP&O"), a private stevedore company, to load and unload cargo at NIT.  On May 28, 2008, Britt was operating a yard tractor, also known as a hustler, to assist with the loading and unloading of the M/V President Adams.  Parker, a stevedore employed by VIT, was operating a straddle carrier to assist with the loading and unloading of another ship, the M/V Manhattan Bridge.  Both Britt and Parker were working in the South Berth area of NIT.  At the same time Britt was hauling a container to be loaded onto the M/V President Adams, Parker was carrying a container that had been unloaded off the M/V Manhattan Bridge. The straddle carrier Parker was operating ran into the side of the container being pulled by the hustler operated by Britt, fatally injuring Britt.

On April 13, 2009, Moore, as administrator of Britt's estate, filed a wrongful death action against Parker and VIT, asserting negligence and premises liability claims.  VIT and Parker filed a plea in bar seeking the dismissal of the action on the basis that the VPA serves as the statutory employer of the CP&O and VIT employees loading and unloading vessels at NIT, and, therefore, Moore's claims are barred by the exclusivity provisions of the Virginia Workers' Compensation Act.

The circuit court determined that the parties were statutory employees of the VPA and sustained the plea in bar from which Moore appeals. According to the circuit court:

> Britt, Parker, and VIT's duties on May 28, 2008 fall squarely within VPA's legislatively mandated responsibilities and are therefore, within VPA's scope of employment. VPA is the statutory employer of all parties. In addition to finding that the parties are fellow statutory employees, the Court finds that there is a contractual basis for the employment relationship between VPA and VIT as well as between VPA and CP&O.

## ANALYSIS

The sole issue before this Court is whether the circuit court erred in determining that Britt and CP&O were statutory employees of the VPA. "The rights and remedies provided in the Virginia Workers' Compensation Act (the Act) are exclusive of all other rights and remedies for employees who fall within the scope of the Act." Burch v. Hechinger Co., 264 Va. 165, 168, 563 S.E.2d 745, 747 (2002). Thus, "[t]he issue whether a particular person or entity is the statutory employer of an injured employee is a jurisdictional matter presenting a mixed question of law and fact that must be determined under the facts of each case." Bosley v. Shepherd, 262 Va. 641, 648, 554 S.E.2d 77, 81 (2001).

The definition of a statutory employer is found in Code § 65.2-302(A), which states:

When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Recognizing that not every statutory employer/employee relationship fits neatly within the parameters of the Code, this Court has developed a number of tests as guides to aid with the proper application of Code § 65.2-302(A). See, e.g., Cinnamon v. IBM Corp., 238 Va. 471, 478, 384 S.E.2d 618, 621 (1989) (recognizing that the normal work test "is only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case"). Two of these tests, the normal work test[1] and the

_____

[1] The normal work test was recognized by this Court in Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (1972).

"[The] test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors."

governmental entity test[2] are discussed at great length by the parties in this case.  Moore, however, contends that neither the normal work test nor the governmental entity test is dispositive as there was no contract between Britt or CP&O and the VPA.  We agree.

The plain language of Code § 65.2-302(A), establishes that two discrete elements must be present for a statutory employer/employee relationship to exist: (1) the work must be part of the owner/contractor's trade, business or occupation, and (2) the owner/contractor must have contracted with another to have work performed.

As we explained in Henderson v. Central Telephone Company of Virginia, 233 Va. 377, 383, 355 S.E.2d 596, 599 (1987) "[t]he [normal work] test is merely an approach that is useful in

Id. at 722, 187 S.E.2d at 167 (quoting 1A Arthur Larson, The Law of Workmen's Compensation § 49.12).

[2] Recognizing the limitations of applying the normal work test to governmental entities, this Court established the governmental entity test in Henderson v. Central Telephone Company of Virginia, 233 Va. 377, 355 S.E.2d 596 (1987).

> It is not simply what [governmental entities] do that defines their trade, business, or occupation.  What they are supposed to do is also a determinant.  Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means.

Id. at 383, 355 S.E.2d at 599-600.

determining an entity's trade, business, or occupation." It is axiomatic then that the governmental entity test, as a counterpart to the normal work test, is a similarly useful approach for determining a governmental entities' trade, business, or occupation.

VIT notes that our "application of the governmental entity test has never turned on contractual interpretation." While technically correct, this assertion is misleading, as our application of the governmental entity test presumes that the owner/contractor has in fact contracted with another to have work performed. Indeed, in each of the cases cited by VIT in support of its argument, the existence of a contract is either expressly stated or inherently implied. Jones v. Commonwealth, 267 Va. 218, 220, 591 S.E.2d 72, 73 (2004) ("[plaintiff] was employed by . . . an independent contractor employed by the University") (emphasis added); Roberts v. City of Alexandria, 246 Va. 17, 18, 431 S.E.2d 275, 275 (1993) ("the Sheriff of the City of Alexandria executed a contract with [plaintiff's employer]") (emphasis added); Henderson, 233 Va. at 378, 355 S.E.2d at 597 ("At the time he was injured, Henderson, was acting pursuant to the contract") (emphasis added); Williams v. E. T. Gresham Co., 201 Va. 457, 458, 111 S.E.2d 498, 499 (1959) ("[defendant] was engaged in driving piles . . . for Chesapeake Bay Ferry District") (emphasis added). Thus, contrary to VIT's

6

assertions, nothing in our jurisprudence indicates that a governmental entity is exempt from the contract requirement of Code § 65.2-302(A) by virtue of its status as a governmental entity.

In the present case, it is undisputed that the stevedore work performed by Britt, Parker, CP&O and VIT was part of the trade, business or occupation of the VPA. The only remaining question is whether the VPA contracted with CP&O to perform stevedore work at NIT.[3] The circuit court determined that a contractual relationship existed between CP&O and the VPA based on CP&O's implicit agreement "to abide by conditions in the [SOR]." We disagree with the circuit court and the undisputed facts of this case demonstrate that no such contractual relationship exists.

In Hudson v. Jarrett, 269 Va. 24, 609 S.E.2d 827 (2005), we examined whether two privately owned stevedore companies operating at the NIT were statutory co-employees by virtue of the fact that both were operating under the SOR. There, the trial court determined that the stevedore companies were co-employees because they were "engaged in the execution or performance of the trade or business of VIT" (i.e. moving cargo from ship to shore and shore to ship) and because the conduct of

---

[3] It is undisputed that such a contractual relationship exists between the VPA and VIT.

7

the stevedore companies was governed by the SOR.  Id. at 30-31,

606 S.E.2d at 830.  We reversed, stating:

>     The Schedule of Rates prescribes certain
> conditions that must be met by those doing
> business at any VIT facility.  By using the
> facility, [the stevedore companies] agreed to
> those conditions.  However, the Schedule of Rates
> is not a contract to perform the actual loading
> and unloading of any particular vessel.  The
> contracts to perform those services are the
> contracts between the ship owners and the
> stevedore companies.

Id. at 31, 606 S.E.2d at 830 (emphasis added).

Here, as in Hudson, the circuit court determined that a

contractual relationship existed between CP&O and the VPA,

stating:

>     When stevedoring companies, such as CP&O, elect
> to do business at a VIT facility like NIT, the
> action of loading and unloading vessels at such a
> facility creates a contractual bind.  By virtue
> of their actions, CP&O's stevedores implicitly
> agreed to abide by conditions in the Schedule of
> Rates.

As we stated in Hudson, however, the SOR is not a contract

that creates a statutory employer relationship under Code

§ 65.2-302(A), and therefore, the necessary contractual

relationship between CP&O and the VPA did not exist in the

present case.  Accordingly, the circuit court erred in

8

determining that the VPA was the statutory employer of CP&O at the time of the accident.[4]

CONCLUSION

For the foregoing reasons, we will reverse the decision of the circuit court and remand the matter for further proceedings in accordance with this opinion.

Reversed and remanded.

JUSTICE McCLANAHAN, concurring.

---

[4] Having determined that the SOR does not create the necessary contractual relationship required under Code § 65.2-302(A), we need not consider Moore's remaining arguments regarding whether the VPA was a valid party to the SOR or the applicability of the Shipping Act of 1984, 46 U.S.C. § 40101 et seq. to the present case.

I agree with the majority's holding that the circuit court erred in finding that the VPA was the statutory employer of CP&O. I write separately, though, to underscore the broader point that the VPA did not hire CP&O to perform any services, specifically including the stevedore services being performed by Britt at the time of the accident. CP&O entered into a contract with the operator of the M/V President Adams to provide the stevedore services in which Britt was engaged at the time of the accident. Therefore, CP&O was performing work for the operator of the ship, not the VPA.

Moore asserts in his first assignment of error that "[t]he [circuit] court erred in finding [the] Virginia Port Authority (VPA) was the statutory employer of [Britt's] employer CP&O, because there was no evidence in the record that the VPA employed CP&O by contract to perform work which . . . Britt was performing when he was injured, as required by Virginia Code § 65.2-302." The Court need go no further than the language of Code § 65.2-302 to hold that the trial court erred in finding that the VPA was the statutory employer of CP&O for the very reason asserted by Moore in his assignment of error.

Pursuant to Code § 65.2-302(A), a statutory employer is

any person (referred to in this section as "owner") [who] undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person

> (referred to in this section as "subcontractor")
> for the execution or performance by or under such
> subcontractor of the whole or any part of the
> work undertaken by such owner.

(Emphasis added.) Because the VPA did not contract with CP&O for the execution or performance of any work that was undertaken by the VPA, there was no owner/subcontractor relationship between the VPA and CP&O. Therefore, VPA was not the statutory employer of CP&O.

The majority is correct in concluding that the SOR did not create a statutory employment relationship between the VPA and CP&O. See Hudson v. Jarrett, 269 Va. 24, 31, 606 S.E.2d 827, 830 (2005) (the SOR "is not a contract to perform the actual loading and unloading of any particular vessel"). But, I would make that finding in the broader context of a holding, in the first instance, that there was no owner/subcontractor relationship between the VPA and CP&O. Because, under the plain language of the statute, there was no such relationship, no discussion of the normal work and governmental entity tests "to aid with the proper application of Code § 65.2-302(A)" was necessary.*

---

* Although the majority states that neither the normal work test nor the governmental entity test is dispositive, the majority, nevertheless, applies the governmental entity test to determine that the work CP&O and Britt were performing was part of the trade, business or occupation of the VPA. However, the governmental entity test, like the normal work test, is applied to determine whether the owner is performing part of its trade,

business or occupation through the use of its subcontractor. See Henderson v. Central Tel. Co., 233 Va. 377, 383-85, 355 S.E.2d 596, 600-01 (1987).  Because the VPA did not contract with CP&O for the performance of any stevedore work, it necessarily follows that the VPA was not performing part of its stevedore work through the use of CP&O.

In determining, initially, whether CP&O and Britt were performing part of the VPA's trade, business or occupation, the majority has allowed the circuit court's flawed approach to frame its analysis.  Instead of determining whether the VPA hired CP&O to perform the stevedore services so as to invoke the provisions of the Act, the circuit court first concluded that Britt, Parker, and VIT were all performing duties that fell within VPA's legislatively mandated responsibilities and were, thus, VPA's statutory employees.  Having made this finding, the circuit court then concluded that because CP&O "implicitly agreed to abide by [the] conditions in the Schedule of Rates," a contractual relationship existed between the VPA and CP&O. Adopting this faulty framework, the majority likewise concludes, at the outset, that the stevedore work performed by Britt, Parker, CP&O and VIT was part of the trade, business or occupation of the VPA. However, this determination cannot, and should not, be made outside the context of an owner/subcontractor relationship since the owner cannot be found to have performed part of its work through the use of another person with whom it has not contracted for execution of that work.